In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-2144

HAMIDA H. NAFICY,

*Plaintiff-Appellant,*

*v.*

ILLINOIS DEP'T OF HUMAN SERVICES,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:09-cv-05408—**James F. Holderman**, *Chief Judge*.

ARGUED MAY 23, 2012—DECIDED SEPTEMBER 18, 2012

Before MANION, ROVNER, and HAMILTON, *Circuit Judges*.

ROVNER, *Circuit Judge.* Hamida Naficy sued her employer, the Illinois Department of Human Services ("IDHS"), alleging discrimination and retaliation under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e, *et seq.* After dismissing the § 1981 claims, the district court granted summary judgment to IDHS on Naficy's Title VII claims. Naficy appeals, and we affirm.

**I.**

Naficy, who is Iranian, began working for IDHS as a social worker in 1996 at the Chicago Read Mental Health Center. Social workers for IDHS are classified as a Social Worker I, II, or III, respectively, with Social Worker III being the most experienced. Naficy started at Read Mental Health Center as a Social Worker II. In 2000, she was promoted to the position of Social Worker III and also transferred to the Madden Mental Health Center.

At both Madden and Read, Naficy worked with Judy Bailey. According to Naficy, Bailey mocked her accent and suggested that she should not have been promoted to a Social Worker III because she was Iranian. In 2005, Bailey became director of the social work department at Madden. As the director of the social work department, Bailey was Naficy's supervisor. While Bailey was her supervisor, Naficy filed two complaints of discrimination. The first was filed in 2005 and related to Naficy's treatment during a layoff and subsequent recall back to her previously held position. It is unclear from the record precisely how that layoff affected Naficy, but she was ultimately placed in a Social Worker III position at Madden in September of that same year. In April 2009, Naficy filed a second complaint of discrimination after she received unfavorable performance evaluations from Bailey.

Naficy's current lawsuit arises out of events at Madden in 2010 related to the closure of another IDHS facility—the Howe Developmental Center in Tinley Park, Illinois. In

implementing the Howe closure, IDHS was obligated to follow certain provisions of a collective bargaining agreement ("CBA") in effect between it and the American Federation of State, County and Municipal Employees ("AFSCME"). Like most IDHS employees, Naficy is a member of AFSCME. The CBA governs layoffs, and closing the entire Howe Developmental Center naturally necessitated a number of layoffs.

The CBA provides that in the event of a layoff, employees may take advantage of a process known as "bumping," whereby more senior employees may displace or "bump" less senior employees subject to the CBA at other IDHS facilities. The CBA sets forth the procedures that must be followed for more senior employees to bump less senior employees. First, IDHS must notify all employees potentially affected by a layoff of their rights under the CBA. This notification must include the following information: (1) a roster listing employees either subject to layoff or affected by the layoff and their respective seniority dates, (2) a list of IDHS vacancies, and (3) available "bumping" options for employees who may be affected by layoff.

The bumping options are exercised according to seniority: "Starting with the highest bargaining unit and pay grade" an employee may choose to "exercise or waive" his or her available bump options. The process, outlined in detail in the CBA, proceeds according to what are identi-

fied as "bumping priorities" one through six.[1] First, an employee subject to layoff "shall bump the least senior employee in the same position classification and work location." (Art. XX - Layoff, §§ 3(c)-(h).) Second, if no one is available to bump at that work location, the employee must bump the least senior employee in that position classification at another facility within the county. (*Id.* § 3(d).) If neither of those options is available, number three directs the employee to bump into the next lower position in the same position classification series at the same work location. (*Id.* § 3(e).) If there is no such available position, an employee must then bump into the next lower position somewhere within the county. (*Id.* § 3(f).) If options one through four are not possible, steps five and six allow an employee to bump into a "previously certified position classification" in either the same work location (step five) or elsewhere within the county (step six). (*Id.* §§ (g)-(h).)

In January 2010, Naficy and other IDHS employees potentially affected by the Howe closure received a letter alerting them to the possibility of a layoff and outlining potential bump options available to them. Naficy's letter listed her potential bump options as follows: (1) Social Worker III at Madden Mental Health

---

[1] In the district court, Naficy denied all of IDHS's statements of material fact relating to the layoff procedures, but she cited no contradictory evidence refuting the procedures. Like the district court, we accept IDHS's statements of fact and the text of the CBA itself as undisputed on this point because Naficy has offered nothing that undermines either one.

Center, (2) Social Worker III (Spanish speaking) at Madden, (3) Social Worker III (part-time) at Madden, and (4) Social Worker II at Madden. The letter also explained that she could "choose not to bump," and select an IDHS vacancy for which she was qualified anywhere in the state, seniority permitting. The letter also contained an employment application that Naficy could use to determine whether she was qualified for a "lateral move or voluntary reduction" into a position included on a published vacancy list. The letter was signed by Elizabeth Sarmiento, the Director of Human Resources. Finally, the letter informed Naficy that the meeting to discuss her potential options would be held at the Howe Developmental Center on February 2, 2010.

At that time, Naficy met with Mark Samaras, the manager of the Bureau of Human Relations, to discuss her options. According to IDHS, as employees exercised their bumping options, Naficy was bumped from her position by a more senior IDHS employee. She asserts that during her meeting Samaras told her, without explanation, that her only remaining option was to take the part-time Social Worker III position at Madden. In addition to being part instead of full time, that position required Naficy to switch from working typical day shifts to working nights from midnight until 6:45 a.m. three days a week (Tuesday, Wednesday, and Saturday). IDHS staff filled out a form for Naficy to sign reflecting her decision to bump into the part-time position. Naficy was officially reassigned to the part-time position on June 1, 2010. She was allowed to return to her former position (full-time Social Worker III) with the

same schedule and salary two months later on August 1, 2010.

At the time of the Howe layoffs, there were three other Social Worker III employees at Madden who were less senior than Naficy. The first, Jaime DeJesus, speaks fluent Spanish and held the Spanish-speaking Social Worker III position. The second, Sharon Byrne, waived her right to bump under the terms of the CBA.[2] When the bumping process was complete at the end of February, Byrne transferred into a vacant full-time Social Worker II position in Elgin, Illinois. The third, William Safian, worked as a part-time Social Worker III. Safian was laid off because Naficy bumped Safian when she moved into what had previously been his part-time position.

Naficy filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in March 2010, alleging that her reassignment to the part-time position was discriminatory and retaliatory. Specifically, she

---

[2] In her response to IDHS's statements of material fact, Naficy denied the allegation that Byrne waived her right to bump. The district court concluded that Naficy had failed to provide any evidence contradicting IDHS's evidence on this point and observed that despite her denial Naficy "appear[ed] to be in general agreement that Byrne did not elect to bump and was allowed to fill a vacant position as a Social Worker II at the Elgin facility." Like the district court, we can see nothing in the record that undermines IDHS's evidence that Byrne waived her right to bump and later transferred into the Social Worker II position.

claimed that IDHS reassigned her to retaliate for previous discrimination complaints she had filed with the EEOC and because she is Iranian. On April 14, 2010, Naficy received a right-to-sue letter from the EEOC. Naficy sued IDHS for discrimination and retaliation under both Title VII and 42 U.S.C. § 1981. The district court dismissed Naficy's claims under § 1981 reasoning that as a state agency, IDHS is not a "person" amenable to suit under 42 U.S.C. § 1983, *see*, *e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989), which "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989).[3] The court then granted summary judgment to IDHS on Naficy's Title VII claims. Specifically, the court concluded that Naficy had no direct evidence of discrimination by anyone involved in her reassignment. Naficy's claims fared no better under the indirect method, where the district court observed that she had failed to identify a similarly situated IDHS employee who received better treatment than she during the Howe layoffs. Finally, the court rejected Naficy's retaliation

---

[3] Although it is questionable whether this portion of *Jett* survived the 1991 amendments to § 1981, Naficy has not appealed the district court's dismissal of her § 1981 claims. In any event, Naficy would still have had to show a pattern or practice of discrimination by IDHS, *see Smith v. Chicago Sch. Reform Bd. of Tr.*, 165 F.3d 1142, 1148-49 (7th Cir. 1999), and there is no suggestion from the record that she could have done so.

claim because Naficy had produced no evidence that her EEOC complaints motivated her reassignment during the Howe layoffs. Moreover, the considerable temporal gap between her complaints (one in 2005 and one in April 2009) and the February 2010 layoffs undermined the claim of a causal connection between the two.

## II.

We review the district court's grant of summary judgment de novo, examining the record in the light most favorable to Naficy and construing all reasonable inferences from the evidence in her favor. *E.g.*, *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

As relevant here, Title VII forbids an employer from discharging or demoting an individual on account of her race or national origin. 42 U.S.C. § 2000e-2. Title VII also prohibits retaliation for protesting employment discrimination and other unlawful practices under the statute. *Id.* § 2000e-3(a). We begin with Naficy's discrimination claims. A plaintiff alleging disparate treatment on account of national origin may prove discrimination either directly or under the indirect burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). Naficy claims she has advanced sufficient evidence to withstand summary judgment under both the direct and indirect methods. We disagree.

To avoid summary judgment using the "direct method," a plaintiff must marshal sufficient evidence, either direct or circumstantial, that an adverse employment action was motivated by discriminatory animus. *E.g., Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Direct evidence "usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Circumstantial evidence may be sufficient to make out a direct claim of discrimination when the plaintiff presents enough evidence to allow a reasonable factfinder to conclude that the adverse employment action was taken as a result of the plaintiff's race or national origin. *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012).

Naficy points to several facts that she believes amount to direct evidence that IDHS discriminated against her in the bumping process. First, she makes much of the fact that despite her seniority, she was denied the Spanish-speaking Social Worker III position given to DeJesus. As best we can tell, she is suggesting that she has shown discrimination from the fact that IDHS had a need for a Spanish-speaking social worker instead of a multilingual employee, like Naficy, who spoke Farsi (Iranian) and Dari (Afghan).[4] And although she asserts

---

[4] Although it is not relevant to the outcome of the appeal, we note that there is some confusion surrounding which languages Naficy speaks. Naficy's brief states that she speaks

(continued...)

without support that IDHS "falsely" said the position was for a Spanish speaker, there is no evidence in the record that supports this claim. The relevant question under the direct method is whether the evidence "points directly" to a discriminatory motive for the employer's decision. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 501 (7th Cir. 2010) (citation and internal quotations omitted). The fact that IDHS gave preference to a Spanish-speaking employee for a Spanish-speaking position not only fails to "point directly" to discrimination, it does not even raise the implication of discrimination. The only *reasonable* inference to be drawn from the fact that IDHS gave the position to DeJesus and not Naficy is that it needed an individual who spoke Spanish—a fact that has no bearing on whether or not IDHS did or did not want employees who spoke Persian. There is no evidence that there was a need for a Farsi or Dari-speaking Social Worker III. It thus strains reason to suggest that a Farsi speaker should be chosen for a Spanish-speaking position or to imply that discrimination motivated the choice of DeJesus over Naficy. The CBA expressly reserves IDHS's right during a layoff "to estab-

---

[4] (...continued)

"various Arab dialects," but she explained in her affidavit in the district court that she speaks "Farci (Iranian) and Darai (Afghan)." We assume this means that she speaks Persian—specifically Farsi or Parsi (spoken in Iran, Afghanistan, and Tajikstan) and Dari (one of the two official languages of Afghanistan). *See Persian Language*, Wikipedia, http://en.wikipedia.org/wiki/Farsi (last visited Aug. 3, 2012).

lish bona fide requirements of specialized skills, training, experience and other necessary qualifications[.]" Naficy can point to nothing suggesting that IDHS did not have a bona fide need for a Spanish speaker, and thus its choice of DeJesus for the position does not raise an inference of discrimination.

Naficy next asserts that discrimination is shown by the fact that Sandra Byrne was allowed to "bump social worker II's for a position," and Naficy was not. This claim is inconsistent with the uncontroverted evidence. Byrne waived her right to bump. She thus did not "bump" anyone; instead, she transferred into a position that became open after those employees who opted to exercise their bumping rights had completed that process. Naficy fails to point to any evidence that undercuts this chain of events. She makes much of the fact that Samaras did not tell her during the meeting that she could elect not to participate in the bumping process. But the letter listing her options plainly stated that she could "choose not to bump" in hopes of transferring into a vacancy for which she was qualified. It is true that the position which Byrne ultimately transferred into did not appear on the original list of vacancies attached to the January 2010 letter. IDHS presented evidence that the Social Worker II position in Elgin was added to the vacancy list via addendum in February after the union requested that IDHS update the list of vacant positions. Naficy offers nothing to refute this explanation as to how this position became available. Thus, Byrne's treatment does not support the inference that

anyone at IDHS intended to discriminate against Naficy on the basis of her national origin.

Lastly, Naficy points to her supervisor Judy Bailey, claiming that she openly disparaged Naficy's accent and attempted to prevent her from obtaining a Social Worker III position from a recall list during a prior layoff in 2005 (an incident that formed the basis for Naficy's 2005 EEOC complaint). She has neither explained what happened in the 2005 layoff nor connected her treatment during it to her reassignment during the 2010 Howe layoffs. Moreover, Naficy has not linked Bailey to her February 2010 reassignment. Samaras, the Human Relations manager, testified in his deposition that Bailey had no input into the layoff process that accompanied the closure of Howe. Bailey also testified that she was uninvolved in the process and in fact did not know Samaras. Naficy's "evidence" that Bailey was somehow connected is based on her bare assertion that Bailey was upset when she heard that Naficy took the part-time position. Specifically, Naficy claims that when she informed Bailey after the meeting that she had taken the part-time position, Bailey was "actually angry" and asked Naficy why she took the part time job. Naficy took this response to mean that Bailey some-how had a hand in the layoff process and had been hoping to use it as an opportunity to eliminate Naficy because she is Iranian. Naficy further claims that Bailey's "anger" proves that she was unhappy that Naficy bumped a non-Iranian out of the position and did not lose her job entirely. Bailey, for her part, testified that she was "surprised and kind of shocked that a full-time

employee would select a part-time position," and that she had urged Naficy to speak to her union representative, which Naficy did. We may accept Naficy's view of Bailey's reaction, but it does nothing to prove Bailey had a hand in the layoffs. And without evidence connecting Bailey to the layoff process, her alleged discriminatory animus towards Naficy is irrelevant. *See Martino v. MCI Commc'n Servs., Inc.*, 574 F.3d 447, 452-53 (7th Cir. 2009) (individual's discriminatory comments only relevant if he was a decisionmaker or had " 'singular influence' " over the decisionmaker) (internal citation omitted). There is thus neither direct nor circumstantial evidence in the record sufficient to create a triable issue of fact of discrimination under the direct method.

Naficy's discrimination claim fares no better under *McDonnell Douglas's* indirect burden-shifting method. Under this method, a plaintiff must first establish a prima facie case of racial or national origin discrimination with evidence that (1) she is a member of the protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. *E.g., Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702 (7th Cir. 2012). If Naficy succeeds in establishing a prima facie case, the burden shifts to IDHS to introduce a legitimate, nondiscriminatory reason for the employment action. *Id.* Then Naficy could avoid summary judgment with evidence suggesting that IDHS's stated reason is in fact pretextual.

Although Naficy can establish the first through third elements of a prima facie case, she fails to identify a similarly situated employee who was not adversely affected in the layoffs. Naficy insists that both DeJesus and Byrne are similarly situated employees. But as discussed above, both individuals differ from Naficy in critical respects. DeJesus speaks Spanish, and Naficy admittedly does not. He was therefore qualified for the Spanish-speaking position, a material difference between him and Naficy that provides a nondiscriminatory explanation as to why he was not bumped from his full-time position. As for Byrne, her decision to opt out of the bumping process placed her in a fundamentally different position than Naficy when it came to the layoffs. By waiving her right to bump, Byrne removed herself entirely from the process (at the risk of losing her job if no vacancies remained when the bumping was complete). She is therefore an unsuitable comparator for Naficy.

Naficy devotes much of her brief to lengthy quotes from our recent decision in *Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012), where we discussed the similarly situated requirement in the context of a Postal Service employee's discrimination claim. We acknowledged in *Coleman* that employees need not be carbon copies, nor must they be "identical in every conceivable way" in order to provide a useful comparator. *See id.* at 846. True as this may be, it is unhelpful for Naficy, because the distinctions between herself and her would-be comparators, DeJesus and Byrne, are material in that they go to the heart of why Naficy received different treatment.

And the differences—that DeJesus spoke Spanish and that Byrne waived her right to bump—provide a reason for their better treatment entirely unrelated to Naficy's national origin.

Indeed, these differences provide the basis of IDHS's legitimate, nondiscriminatory explanation for Naficy's treatment. And Naficy has provided no evidence that refutes or casts doubt on IDHS's explanation. Thus, we could go so far as to assume Naficy had established a prima facie case under the indirect method, and her claim would still fail on account of her inability to cast doubt on IDHS's nondiscriminatory reason for the employment action. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 885 (7th Cir. 2012).

That leaves Naficy's retaliation claim. Like discrimination under Title VII, retaliation may be proven using either the direct or indirect method. Naficy discusses only the direct method in her brief. Under the direct method, Naficy may avoid summary judgment by presenting evidence of (1) statutorily protected activity, (2) an adverse action (sufficiently material to deter protected activity), and (3) a causal connection between the two. *E.g.*, *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). Naficy can show causation with evidence that her EEOC filings in 2005 and 2009 were a "substantial or motivating factor" in her treatment during the Howe layoffs. *Coleman*, 667 F.3d at 860 (internal quotations and citation omitted).

The parties agree that Naficy's charges of discrimination in 2005 and April 2009 constitute statutorily pro-

tected activity and that her reassignment to the part-time position is a materially adverse employment action. The sole question is thus whether Naficy has adequately connected the two. As with discrimination, "direct" evidence of retaliation may be proven by evidence showing retaliation without resort to inference, *id*.,—i.e., something along the lines of a direct admission that Naficy's complaints motivated her reassignment to the part-time position. *See Benders v. Bellows & Bellows*, 515 F.3d 757, 764 (7th Cir. 2008) (noting the "rare" nature of truly "direct evidence"). Naficy has no such evidence linking her reassignment to her previous complaints of discrimination. Instead, she attempts to connect the two using what we have recognized as a "'convincing mosaic' of circumstantial evidence" that supports an inference of retaliation. *Coleman*, 667 F.3d at 860 (internal citation omitted). Such circumstantial evidence includes suspicious timing, evidence that similarly situated employees were treated differently, or evidence that the employer's stated reason for the adverse employment action was pretextual. *Id.*

As for suspicious timing, the large temporal gaps between her complaints and her reassignment undercut, rather than support, a causal link between the two. Her first EEOC complaint was filed in 2005 and related to an earlier IDHS layoff. The five-year gap between her complaint and the Howe layoffs makes it extremely unlikely that the two events were related. Likewise, the nine-month gap between her second complaint—filed in April 2009—does little to raise suspicion about Naficy's treatment during the layoff. *See Jajeh v. County*

*of Cook*, 678 F.3d 560, 570 (7th Cir. 2012) (five-month gap between complaint of discrimination and adverse employment action did not amount to suspicious timing); *Leonard v. E. Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010) (noting that six-month lag between complaint and denial of promotion was "too long to infer a link between the two").

As evidence of disparate treatment or pretext, Naficy provides page after page of quotations from *Coleman* and other retaliation cases, but says precious little indeed about how *she* has actually established a causal link between her EEOC complaints and her ultimate reassignment during the Howe layoffs. Indeed, her primary argument on this point is her assertion, buried among several pages of quotes from *Coleman* and other decisions, that IDHS "qualified Plaintiff for bumping positions which disappeared and came up with positions which were not presented as alternatives to Plaintiff in formal notices (Social worker—Spanish speaking; Elgin social worker position, etc.)." This account of DeJesus and Byrne's treatment during the layoff does nothing to establish retaliatory motive on the part of IDHS. As discussed above, IDHS has provided a legitimate, nondiscriminatory explanation for why Naficy's only option in the bumping process was the part-time position, and also why Byrne—who waived her right to bump—was able to transfer into the position in Elgin at the conclusion of the bumping process. Presumably her assertion that positions "disappeared" refers to positions listed in the January 2010 letter that were no longer available when she spoke to Samaras at her

February meeting. But IDHS explained that as senior employees exercised their bumping options Naficy was bumped from her position and several of the listed choices in her letter became unavailable. And although Naficy cites multiple cases for the proposition that pretext may be proven with evidence that an employer lied or failed to follow its own policies, she fails to identify any instance showing that IDHS is guilty of such behavior. There is no evidence in the record that Naficy's experience deviated in any way from the bumping protocol set forth in the CBA. In short, Naficy offers nothing but her own speculation to suggest that IDHS's explanations are pretextual, and that is insufficient. *Overly v. KeyBank Nat'l Ass'n*, 662 F.3d 856, 864 (7th Cir. 2011) ("[R]eliance on speculation is not enough to get the case to a jury.")

The last potential evidence of retaliation is Naficy's claim that Bailey knew of and disapproved of her EEOC complaints. This claim, too, goes nowhere. First, she cites no evidence to support her claim that Bailey knew about her complaints. More importantly, as discussed above, Naficy has failed to link Bailey to the layoff procedure or identify any evidence calling into question IDHS's evidence that Bailey had no involvement in the layoff process and Naficy's reassignment in particular. As such, there is no record evidence from which a rational juror could infer IDHS reassigned Naficy to retaliate against her for her 2005 and 2009 complaints of discrimination.

## III.

As the concurring opinion in *Coleman* recently recognized, after setting aside the "snarls and knots" occasioned by using the "direct" and "indirect" formulations, the question is simply whether the plaintiff has "one way or the other" presented sufficient evidence that she is protected by the statute, suffered an adverse employment action, and sufficient evidence exists that a rational jury might conclude the employer acted on account of the plaintiff's protected class as opposed to some other benign reason. *Coleman*, 667 F.3d at 863 (Wood, J. concurring). Regardless of how the evidence is viewed, Naficy has offered nothing from which a rational juror could conclude that her reassignment to a part-time position in the wake of the Howe layoffs was motivated by either discrimination or retaliation.

Accordingly, we AFFIRM the judgment of the district court granting summary judgment to IDHS on Naficy's claims.