In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1135

JOSALYNN M. BROWN AND CAROLYN WILSON,

*Plaintiffs-Appellants,*

*v.*

ADVOCATE SOUTH SUBURBAN HOSPITAL AND
ADVOCATE HEALTH & HOSPITALS CORPORATION,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 cv 5386—**Robert W. Gettleman**, *Judge.*

ARGUED SEPTEMBER 21, 2012—DECIDED NOVEMBER 21, 2012

Before POSNER, KANNE, and SYKES, *Circuit Judges*.

KANNE, *Circuit Judge.*   Over a span of several years,
two hospital nurses, Josalynn M. Brown and Carolyn
Wilson, raised a series of complaints about their
working conditions, including complaints of racial dis-
crimination. They later sued their employers, defendants
Advocate South Suburban Hospital and Advocate Health

and Hospitals Corporation (collectively referred to as "Advocate"). Brown and Wilson argued that Advocate had discriminated against them and subsequently retaliated against them for complaining about the discrimination. The district court concluded that there was not enough evidence to support the nurses' claims and granted summary judgment for Advocate. Having independently reviewed the record, we agree with the district court and affirm.

## I. BACKGROUND

Josalynn M. Brown and Carolyn Wilson began working as nurses at Advocate Christ Medical Center (which we will refer to as "Advocate Christ" and which is not a party to this action) in 2005. Both plaintiffs are African-American. On May 10, 2008, the plaintiffs and ten other nurses delivered a Petition for Change in Labor Practices to their human resources department. The petition alleged that Advocate Christ treated its Filipino nurses better than its African-American nurses by giving them easier assignments, more training, and more leadership opportunities. Several human resources employees at Advocate Christ investigated the claims in the petition and ultimately concluded that the claims could not be corroborated.

Both plaintiffs resigned their positions at Advocate Christ in mid-September 2008. In October 2008, they began working at Advocate South Suburban Hospital and quickly became concerned with the way things were being run. Brown complained that other

nurses were sleeping while on duty, that her unit's culture was unprofessional, and that her work assignments were unequal and unfair. Wilson similarly complained about patient care and safety issues. When their supervisors failed to make the changes that the plaintiffs recommended, the plaintiffs began to suspect that they were being ignored because of their race and started lodging complaints about that as well. In March 2009, both plaintiffs started applying for positions at other Advocate facilities. Brown and Wilson both received an interview for one position, but neither was ultimately hired. Wilson claims that she eventually applied to over one hundred different positions within Advocate's network and never received any of them, although she also admits that she was unqualified for many of these positions, that forty-three of them were cancelled without being filled, and that, since January 2010, a medical condition has prevented her from providing direct patient care.

Both plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission in May 2009. They subsequently filed this lawsuit on August 31, 2009, against Advocate South Suburban Hospital and its parent corporation, Advocate Health and Hospitals Corp. On December 20, 2011, the district court entered summary judgment in favor of Advocate, and the plaintiffs filed a timely notice of appeal on January 18, 2012.

## II. ANALYSIS

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's entry of summary judgment *de novo*, viewing all of the evidence in the light most favorable to the nonmoving party. *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702 (7th Cir. 2012). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (internal quotation marks and brackets omitted). Rather, a genuine issue of material fact exists only if there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.*

The plaintiffs raise two claims under Title VII—a discrimination claim and a retaliation claim.[1] The district court granted summary judgment to the defendants on both claims. The plaintiffs' briefs in this court also raise a hostile work environment claim under Title VII and a claim under the Family and Medical Leave Act. But the plaintiffs did not raise these claims anywhere

---

[1] Technically, the plaintiffs brought their discrimination and retaliation claims under 42 U.S.C. § 1981 as well as Title VII, but the elements and methods of proof for § 1981 claims are "essentially identical" to those under Title VII, *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010), so we need not analyze them separately.

in their complaint; accordingly, these two additional claims are forfeited, and we will confine our discussion to the two Title VII claims that the plaintiffs properly preserved for appeal. *See Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008) ("it is axiomatic that an issue not first presented to the district court may not be raised before the appellate court as a ground for reversal") (internal brackets omitted).

*A. Discrimination*

Title VII makes it illegal "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of race. 42 U.S.C. § 2000e-2(a). To prove that discrimination occurred, a plaintiff may proceed under either the direct method or the indirect method of proof. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004). Under the direct method, the plaintiff must produce either direct or circumstantial evidence of discriminatory intent. *Id.* And under the indirect method, the plaintiff must satisfy the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Dandy*, 388 F.3d at 273. The plaintiffs proceed under both methods here.

The district court found that the plaintiffs had not established a triable issue of fact under either method, and we think that the district court was correct. The

indirect method is easily addressed. To establish discrimination under the indirect method, the plaintiffs must, among other things, provide evidence that their employer treated them differently than "similarly situated" employees outside of their protected class. *Maclin v. SBC Ameritech*, 520 F.3d 781, 787 (7th Cir. 2008). To meet this burden, they must show that there is someone who is directly comparable to them in all material respects except for membership in the protected class. *Winsley v. Cook Cnty.*, 563 F.3d 598, 605 (7th Cir. 2009). But the plaintiffs have not identified any such person. Instead, they offer only a bare assertion that "nurses with far less experience who were not African-American" received transfers and more desirable shifts. (Appellants' Br. at 18.) But, of the documents that the plaintiffs cite for this proposition, the only one that actually supports it is their complaint. Mere allegations in a complaint, however, are not "evidence" and do not establish a triable issue of fact. *Tibbs v. City of Chicago*, 469 F.3d 661, 663 n.2 (7th Cir. 2006). Accordingly, we agree with the district court that the plaintiffs cannot survive summary judgment under the indirect method.

Nor do the plaintiffs fare any better using the direct method. Under this method, they must provide "either direct evidence or circumstantial evidence that shows that the employer acted based on prohibited animus." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009). Because Advocate has not openly admitted to discriminating against them, the plaintiffs must construct "a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by

the decisionmaker." *Phelan v. Cook Cnty.*, 463 F.3d 773, 779 (7th Cir. 2006). The pieces of this mosaic generally take one of three forms. First, the plaintiffs may show evidence of suspicious timing, ambiguous behavior, statements or comments directed at employees in the protected group, and "other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* at 781. Second, they may provide evidence that a "similarly situated employee received more favorable treatment." *Id.* And third, they may provide evidence that the plaintiff "was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic, and that the employer's stated reason for the difference in treatment is unworthy of belief." *Id.*

The plaintiffs offer two tiles to fill out their mosaic here. First, they contend that other, less-qualified, non-African-American nurses were given transfers and better shifts. But, as discussed, the plaintiffs provided no actual evidence to support this contention. Second, the plaintiffs argue that the defendants did not adequately respond to their complaints about discrimination, safety violations, and workplace conditions. But we do not think that a reasonable jury could infer bias from these circumstances.

Title VII protects against discrimination, not "personal animosity or juvenile behavior." *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 666 (7th Cir. 2005). The record demonstrates that, between 2008 and 2010, the plaintiffs made numerous complaints to management, some involving racial issues and others involving general workplace

disputes. The defendants investigated many of the complaints, took action on some of them, and declined to take action on others. The plaintiffs also claim that the defendants harassed them in response to these complaints, but this "harassment" appears mainly to have been criticism about the plaintiffs' perceived lack of teamwork. Specifically, a supervisor wrote a draft of a "negative summary of associate review" and a "performance deficiency notice" for Brown (but never actually finalized either document, nor placed them in Brown's personnel file, nor even told Brown about them), and Wilson was called a "trouble maker," a "cry baby," and a "spoiled child" during a meeting by a supervisor, causing Wilson to leave the meeting in tears.

The plaintiffs contend that we can infer bias from these facts because the defendants did not respond to the plaintiffs' complaints as the plaintiffs would have liked. But the fact that someone disagrees with you (or declines to take your advice) does not, without more, suggest that they *discriminated* against you. Nor do any of the criticisms that the plaintiffs experienced suggest a discriminatory motive. All of the criticisms used non-racial language, and nothing else about their context suggests that they were racially motivated. *Cf. Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 546 (7th Cir. 2011) ("Johnson made some remarks with racial undertones, but he did not hurl racially charged epithets at his co-workers. He had a hostile attitude and was at times aggressive, but other than speculation, Yancick cannot connect Johnson's behavior with racial animus."). Perhaps their supervisors' criticisms were unfair—clearly the

plaintiffs feel that they were—but there is no evidence that they were unfair *because they were motivated by race*, as Title VII forbids. *See Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 603 (7th Cir. 2011) ("although [plaintiff] disagreed with his negative evaluations, that does not mean that the evaluations were the result of unlawful discrimination"); *see also id.* (*quoting Brill v. Lante Corp.*, 119 F.3d 1266, 1273 (7th Cir. 1997)) ("'The question is not whether the employer's performance ratings were *right* but whether the employer's description of its reasons is *honest*.'") (internal brackets omitted). Accordingly, the plaintiffs did not present a triable issue of fact under the direct method or the indirect method, and the district court correctly granted summary judgment on the discrimination claim.

*B. Retaliation*

That brings us to the plaintiffs' retaliation claim. In addition to forbidding workplace discrimination, Title VII also prohibits retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [this subchapter,] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [this subchapter.]" 42 U.S.C. § 2000e-3(a). As before, the plaintiffs attempt to prove this claim under both the direct and indirect methods.

Like a discrimination claim, proving a retaliation claim under the indirect method requires evidence that a

similarly situated employee who did not engage in the statutorily protected activity received better treatment. *Harper*, 687 F.3d at 309-10. As discussed, the plaintiffs have not pointed to any such person. Thus, we can again make short work of the plaintiffs' arguments under the indirect method.

So we move on to the direct method. To establish retaliation under the direct method, the plaintiffs must satisfy three elements. First, they must show that they engaged in protected activity under Title VII. *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012). Second, they must show that they suffered an adverse employment action. *Id*. And third, they must show that there is a causal link between their protected activity and the adverse action. *Id.* Or, to put it another way, the plaintiffs must produce evidence that a "retaliatory animus" motivated the defendants' adverse actions against them. *Smith v. Bray*, 681 F.3d 888, 901 (7th Cir. 2012). "Not everything that makes an employee unhappy is an actionable adverse action." *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) (internal brackets omitted). Because an adverse employment action under Title VII's retaliation provision must be "materially" adverse, "it is important to separate significant from trivial harms"; an action is only adverse if it might dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

The plaintiffs acknowledge that they were never formally disciplined, terminated, or denied pay or bene-

fits. Beyond that, they are hazy about precisely how they believe the defendants retaliated against them. They argue in passing that they were unfairly denied favorable shifts and work assignments, but, as we have already discussed several times, the plaintiffs presented no evidence to support this argument. The plaintiffs' counsel also stated during oral argument that the defendants "tried" to terminate them, but again, they provide no evidence to back up that claim.

That leaves three basic ways in which the plaintiffs contend they were retaliated against. First, they argue that the defendants treated them unfairly and ignored their complaints. As the plaintiffs' counsel explained during oral argument, his clients were "not being listened to" and getting "a cold shoulder from management." Instead of taking the plaintiffs' suggestions, managers "wrongly accused" them of being "cry bab[ies]" and "trouble maker[s]" and "left the wrongdoers undisciplined in any way." Similarly, the plaintiffs' brief cites to evidence that a supervisor called Wilson a "trouble maker," a "cry baby," and a "spoiled child."

We do not think that this sort of behavior constitutes a materially adverse employment action. "'[P]ersonality conflicts at work that generate antipathy' and 'snubbing by supervisors and co-workers' are not actionable" under Title VII, *Burlington Northern*, 548 U.S. at 68 (*quoting* 1 B. Lindemann & P. Grossman, *Employment Discrimination Law* 669 (3d ed. 1996)), and we think that getting a "cold shoulder" from your boss easily falls within this non-actionable category. As far as being called a

trouble maker, a cry baby, and a spoiled child, it is unclear whether these statements referred to the plaintiffs' discrimination complaints or simply to some other workplace issue. *See Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1066 (7th Cir. 2003) (Title VII prohibits retaliation for complaints about discrimination, not retaliation for complaints about other workplace issues). But assuming, as we must at this stage, that the comments referred to the plaintiffs' discrimination complaints, we are confident that the comments were not materially adverse. In *Dunn v. Washington Cnty. Hospital*, for example, a nurse complained that a doctor sexually harassed her. 429 F.3d 689, 690 (7th Cir. 2005). In response, the doctor asked the nurse to withdraw her complaint in a "nasty and uncivil tone" and told her that "paybacks are hell" but took no other action against her. *Id.* at 692-93. Because the doctor's statements did not cause the nurse any actual injury, we held that they would not have dissuaded a reasonable person from complaining and therefore were not materially adverse employment actions. *Id.* Similarly, the relatively mild epithets at issue here were not materially adverse. *See id.*; *see also Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009) (performance improvement plan instructing employee to " 'become more aware of her tone' and to 'work on becoming a better listener' . . . would not dissuade a reasonable person from exercising her rights") (internal brackets omitted); *Stephens*, 569 F.3d at 790 (being "stared and yelled at . . . is not an actionable harm"); *Recio v. Creighton Univ.*, 521 F.3d 934, 940-41 (8th Cir. 2008) (getting "the silent treatment" from colleagues not materially

adverse); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214-15 (10th Cir. 2008) (incivility of co-workers at a meeting, including eye-rolling, laughing at plaintiff's opinions, and commenting behind his back, were not materially adverse); *cf. Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1030 (7th Cir. 2004) ("It is well established that unfulfilled threats that result in no material harm cannot be considered an adverse employment action under Title VII."). Or, to put it another way, we do not think that being called a trouble maker, a cry baby, or a spoiled child would dissuade a reasonable person from complaining of discrimination.

The plaintiffs also claim that they were retaliated against when their requests for transfers to other hospitals were denied. That might be an adverse employment action, provided the transfer would have resulted in higher pay or benefits. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 900 (7th Cir. 2003) ("the denial of an opportunity to move to [a higher paying] position, unlike the mere denial of a lateral transfer, constitutes a materially adverse employment action"); *cf. Dandy*, 388 F.3d at 275 ("because her request was for a lateral transfer offering parallel pay, benefits, and responsibilities, UPS's refusal to grant that request does not constitute an adverse employment action"). But the plaintiffs must also provide evidence that a retaliatory animus motivated the denials, *see Smith*, 681 F.3d at 901, and they have not done so.

The plaintiffs argue that the decision-makers must have known about their discrimination complaints

because the complaints had been covered in local news media and might have been a subject of workplace chatter. But the plaintiffs must produce evidence that a retaliatory motive *actually* influenced the decision-maker, not merely that it *could* have, *see Nagle*, 554 F.3d at 1122; our favor toward the nonmoving party on summary judgment "does not extend to drawing inferences that are supported by only speculation or conjecture," *Harper*, 687 F.3d at 306. As it stands, the plaintiffs' argument for retaliatory animus relies entirely on speculation. No affirmative evidence suggests that the decision-makers were even *aware* of the plaintiffs' discrimination complaints before they denied the transfers, much less that they did so intending to retaliate against the plaintiffs. Nor have the plaintiffs presented any affirmative evidence that anybody improperly influenced the decision-makers under the so-called "cat's paw" theory of liability. *See Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012) ("the 'cat's paw' metaphor refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action"); *accord Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192-94 (2011). Accordingly, even if the transfer denials were adverse employment actions, the plaintiffs have not provided enough evidence to show that they were motivated by a retaliatory animus.

Finally, Brown claims that a supervisor drafted a "negative summary of associate review" and a "perfor-

mance deficiency notice" that unfairly criticized her conduct and, in turn, constituted retaliatory adverse employment actions.[2] At the outset, it is not clear whether a negative performance review, standing alone, can *ever* constitute a materially adverse employment action in the retaliation context. *Compare Silverman v. Bd. of Educ. of Chicago*, 637 F.3d 729, 741 (7th Cir. 2011) ("a negative performance evaluation could constitute an adverse action within the meaning of the direct method of proving retaliation"), *with Davis v. Time Warner Cable of Se. Wisc., L.P.*, 651 F.3d 664, 677 (7th Cir. 2011) ("Performance improvement plans, particularly minimally onerous ones like that here, are not, without more, adverse employment actions."), *and Volovsek v. Wis. Dep't of Agric. Trade and Consumer Prot.*, 344 F.3d 680, 688 (7th Cir. 2003) ("disputed performance reviews . . . do not,

---

[2] The plaintiffs have not actually provided these documents; the only evidence they cite to prove their existence is a series of selective excerpts to the deposition testimony of the supervisor who allegedly wrote them. But "[t]he meaning of quoted phrases often depends critically on the unquoted context." *Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 669 (7th Cir. 2003). As a result, it will often violate "the 'best evidence' rule of Fed. R. Evid. 1002 and the 'completeness' rule of Fed. R. Evid. 106 to present trial excerpts from a key document without introducing the document itself." *Id.* (internal parentheses omitted). Accordingly, it is unclear whether the deposition testimony would even be enough to prove the existence of the documents at trial. But, because we can resolve the issue on other grounds, we need not decide this question now.

themselves, amount to the kind of adverse employment action that constitutes discrimination or retaliation").

But we can set that issue aside for the purposes of this case. As Brown acknowledges, the drafts of the negative reviews "were never given to Brown or posted in her personnel file," (Appellants' Br. at 19), and resulted in no actual consequences for her. Even if these documents could be considered adverse, we do not think they can fairly be described as "materially" adverse. As a result, the district court correctly granted summary judgment on all of the plaintiffs' claims.

### III. CONCLUSION

We AFFIRM the district court's entry of summary judgment in favor of the defendants.