In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3345

TOY COLLINS,

*Plaintiff-Appellant,*

*v.*

AMERICAN RED CROSS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 08-cv-50160—**Frederick J. Kapala**, *Judge.*

ARGUED NOVEMBER 28, 2012—DECIDED MARCH 8, 2013

Before KANNE, WOOD, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Toy Collins worked for the American Red Cross. The Red Cross later fired her after an investigation concluded that Collins committed multiple acts of employee misconduct. Collins sued under Title VII, claiming that she was really fired because of illegal retaliation and discrimination. The district court found that Collins did not present enough evidence to support her claims and granted summary judgment for the Red Cross. We agree with the district court and affirm.

## I. BACKGROUND

Toy Collins first started working with the American Red Cross in 1998 as a paid volunteer with AmeriCorps, a federal community service organization. After her AmeriCorps stint ended in 2000, the Red Cross hired Collins as a full-time employee in its Rockford, Illinois office.

Collins is African-American. In the summer of 2006, Collins called the Red Cross's 24-hour confidential hotline to complain about discrimination: she alleged that her co-workers put tacks on her chair, damaged her property, demanded private information, stole her files, required her to pay business costs from her own pocket, and otherwise harassed and sabotaged her. On August 31, 2006, she filed a racial discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). The EEOC gave her a "right-to-sue" letter on February 26, 2007, but Collins did not sue at that time.

In June 2007, several of Collins's co-workers complained that Collins (1) told others that the Red Cross was out to get minorities; (2) said she could not work with homosexuals; (3) instructed an employee to falsify records; (4) coerced a subordinate into teaching a class for free; and (5) gave out blank certifications for Red Cross courses. The Red Cross assigned Janet Stice, a human resources officer from a different office, to investigate the complaints. Stice interviewed eight witnesses between June 26, 2007, and June 28, 2007. Stice also interviewed Collins, who denied the allegations

against her. Ultimately, Stice found all of the allegations against Collins were "[s]ubstantiated." (R. 77-20 at 8.) Stice compiled her findings in a written report and recommended that Collins be terminated. (*Id.* at 2-8.) Based on the report, the Red Cross terminated Collins on July 16, 2007. Collins sued under Title VII, alleging that the Red Cross retaliated against her for filing the 2006 EEOC complaint and discriminated against her because of her race. The district court granted summary judgment in favor of the Red Cross, and Collins now appeals.

## II. ANALYSIS

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's entry of summary judgment *de novo* and view the evidence in the light most favorable to the nonmoving party. *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702 (7th Cir. 2012). That said, we will not draw inferences "that are supported by only speculation or conjecture." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). A genuine issue of material fact exists only where there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.* Here, Collins raises two Title VII claims: one for retaliation, *see* 42 U.S.C. § 2000e-3(a), and another for discrimination, *see* 42 U.S.C. § 2000e-2(a). The district court entered summary judgment in favor of the Red Cross on both claims, and we will address each in turn.

*A. Retaliation*

Title VII forbids retaliating against an employee "because he has opposed any practice made . . . unlawful . . . by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Here, Collins attempts to prove her retaliation claim under the "direct method" of proof. To do so, she must show that (1) she engaged in protected activity under Title VII; (2) she suffered an adverse employment action; and, (3) there is a causal link between her protected activity and the adverse action. *See Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012). The Red Cross rightly concedes that filing an EEOC complaint was a protected activity and that Collins's termination was an adverse employment action. *See Arizanovska*, 682 F.3d at 703-04. Thus, the only question is whether there was a causal link between the two.

To answer this question, Collins directs us to Janet Stice's report recommending that the Red Cross terminate Collins. The "Disposition" section of the report included a list of allegations that Stice found to be "[s]ubstantiated." (*See* R. 77-20 at 8.) One of those conclusions was that Collins "has told others that [the Red Cross] is out to get minorities." (*Id.*) According to Collins though, none of Stice's interviews actually substantiated this claim. Thus, Collins concludes, the report must have been referring to Collins's EEOC complaint, and a reasonable jury could find in her favor.

We disagree. Stice's report begins with a list of allegations, one of which was that Collins "told others that [the Red Cross] is out to get minorities." (*Id.* at 2.) From there, the report contains several pages of brief summaries of interviews with Collins's co-workers. Following that are several pages of what appear to be rough transcriptions of Stice's interview with Collins. Finally, the last page of the report concludes that the initial allegations are "[s]ubstantiated" and recommends that Collins be terminated.

Read as a whole, we think it clear that Stice's report was not referring to Collins's EEOC complaint when it concluded that Collins "told others that [the Red Cross] is out to get minorities." (*Id.* at 8.) The report does not ever mention Collins's nearly year-old EEOC complaint. What it does mention, however, is a series of complaints and allegations about Collins stirring up tensions between her co-workers. According to one interview summary in the report, Collins called one co-worker "a racist" and another co-worker "a lesbian." (*Id.* at 3.) A third co-worker said that Collins "is very paranoid about other people" and "thinks that people have conspiracies out to get her." (*Id.* at 4.) The transcript of the interview with Collins also provides guidance; it indicates that Stice asked Collins "Did you tell Adrianna, we have to stick together because they are all racist?"; and "[D]id you say that Kathy was a racist?" (*Id.* at 5-6.) Given this context, we think it clear that the report was concerned with Collins sowing racial tension in the office, not with her EEOC complaint.

Collins responds that the report did not do a particularly good job of supporting this conclusion. And Collins is not wrong. For instance, the report indicates that Stice asked if Collins told "Adrianna" that "we have to stick together because they are all racist?" (*Id.* at 5.) Stice's summary of her interview with "Adriana," however, does not specifically mention this allegation. (*Id.* at 3.) Doubtless, then, Stice could have documented her findings more clearly. Nevertheless, at least *something* in the report suggests that it was concerned with Collins sowing racial tension in the office. Indeed, several parts of the report do. But *nothing* in the report suggests that it was concerned with Collins's EEOC complaint. And we see no reason why a reasonable jury would reject a proposition supported by some, albeit imperfect, evidence in favor of a proposition supported by no evidence at all.

Thus, we do not think that a reasonable jury could find that the report's conclusions referred to Collins's EEOC complaint. Of course, that does not mean that the report's conclusions were *correct*. Collins denies making the statements that the report attributes to her, and we must assume, at this stage, that Collins is telling the truth. Stice's report was sloppy, and perhaps it was also mistaken or even unfair. But Title VII does not forbid sloppy, mistaken, or unfair terminations; it forbids discriminatory or retaliatory terminations. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012). Collins has provided evidence showing, at most, that the report's conclusions were wrong. But she has not provided anything—apart from mere specula-

tion—that the report's conclusions were wrong *because of Collins's EEOC complaint*. As a result, the Red Cross was entitled to summary judgment.[1]

## B. *Discrimination*

Collins also claims that the Red Cross racially discriminated against her. Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of race. 42 U.S.C. § 2000e-2(a)(1). Generally speaking, there are two ways of proving such a claim: the "direct" method of proof and the "indirect" method of proof. *See Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 509 (7th Cir. 2012). *But cf. Coleman*, 667 F.3d at 863 (Wood, J., concurring) (arguing that the direct/indirect distinction is unnecessarily com-

---

[1] The reader may wonder about Collins's alleged comments that Stice's report found to be "[s]ubstantiated." (R. 77-20 at 8.) For example, according to the report, Collins "told others that [the Red Cross] is out to get minorities" and told one of her co-workers that another co-worker was a racist. (*Id.* at 3, 8.) Did the Red Cross retaliate against Collins for making *these* statements? And, if so, would that give rise to a Title VII claim? Interesting questions all, but we need not address them. Collins denies making the statements that Stice's report attributes to her. (*See, e.g.,* Appellant's Br. at 11, 14.) And, needless to say, Collins cannot win a suit based on factual events that she insists never happened.

plicated and that "the time has come to collapse all these tests into one"). Under the direct method, a plaintiff must provide either direct or circumstantial evidence that the employer had a discriminatory motivation. *Naficy*, 697 F.3d at 509. And under the indirect method, a plaintiff must satisfy the well-worn requirements of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Naficy*, 697 F.3d at 509.

Collins employs both methods here, and we will start by addressing the indirect method. Under the indirect method, a plaintiff must first establish a prima facie case by providing evidence "that (1) she is a member of the protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Id.* at 511. If she does so, then the burden shifts to the employer "to introduce a legitimate, nondiscriminatory reason for the employment action." *Id.* If the employer meets that burden of production, then the burden shifts back to the plaintiff to provide evidence that the employer's reason was pretextual. *Id.* at 511-12.

"Normally a court should first determine if a plaintiff has established a prima facie case before subjecting the employer to the pretext inquiry." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006). But where, as here, "an employer has cited performance issues as the justification for its adverse action, the performance element of the prima facie case cannot be separated from" the pretext inquiry. *Duncan v. Fleetwood Motor*

*Homes of Ind., Inc.*, 518 F.3d 486, 491 (7th Cir. 2008) (*per curiam*). Thus, we may appropriately begin with pretext. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009).

"Pretext means a lie, specifically a phony reason for some action." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (internal quotation marks omitted). Thus, the question before us "is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." *Coleman*, 667 F.3d at 852. "It is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Id.*

Here, the Red Cross claims that Collins's misconduct, as described in Stice's report, was a legitimate, nondiscriminatory reason for terminating her. Specifically, Stice concluded that Collins had (1) told others that the Red Cross was out to get minorities; (2) said she could not work with homosexuals; (3) instructed an employee to falsify records; (4) coerced a subordinate into teaching a class for free; and (5) gave out blank certifications for Red Cross courses. (R. 77-20 at 8.) Based on these findings, Stice recommended that the Red Cross terminate Collins. (*Id.*)

Collins argues that Stice's findings were pretextual. In support, she provides only one piece of evidence: the fact that she "denied all of the allegations generated during" the Red Cross's investigation. (Appellant's Br. at

14.) But, as discussed, a plaintiff must show that her employer is *lying*, not merely that her employer is wrong. *See Coleman*, 667 F.3d at 852.

As a result, arguing "about the accuracy of the employer's assessment" is a "distraction" in the pretext context; the fact that a statement is inaccurate does not mean that it is a deliberate lie. *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 744 (7th Cir. 2002). Accordingly, merely denying the employer's allegations, as Collins does here, is not enough to survive summary judgment under the indirect method.

That leaves the direct method. Under this method, Collins must provide either direct evidence or circumstantial evidence that the Red Cross terminated her because of racial animus. *See Brown*, 700 F.3d at 1105. Direct evidence of discrimination would require something akin to an admission from the Red Cross that it terminated Collins because of her race. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Circumstantial evidence, on the other hand, would require Collins to "construct a convincing mosaic" that "allows a jury to infer intentional discrimination by the decisionmaker." *Brown*, 700 F.3d at 1105 (internal quotation marks omitted). Collins identifies only one piece of such evidence here: the "apparently false claim that she had told unnamed 'others' that [the Red Cross] was 'out to get' minorities." (Appellant's Br. at 14.) "This baseless allegation," she continues, "strongly suggests racial animus as a motive for the termination." (*Id.*)

We do not see how. True, the report used the word "minorities," but never in reference to Collins's status as

a minority. And even assuming, as we must at this stage, that the report's allegation was "baseless," it does not follow that it was racially motivated. Evidence that an employer came to the wrong conclusion might suggest discrimination if the conclusion were incredible on its face or if it were accompanied by other circum-stantial evidence. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (plaintiff "must identify such weaknesses, implausibilities, inconsistencies, or contradictions . . . that a reasonable person could find them unworthy of credence and hence infer" that the employer was lying). But none of the evidence in this case fits that bill; Stice's conclusions are not facially incredible, and nothing in the record suggests—directly or indirectly—that Stice or the decisionmakers at the Red Cross held any racial animus. And so we are left, at most, with evidence that the Red Cross was wrong. That is not enough to survive summary judgment on a dis-crimination claim. *See Brown*, 700 F.3d at 1106 ("Perhaps their supervisors' criticisms were unfair—clearly the plaintiffs feel that they were—but there is no evidence that they were unfair *because they were motivated by race*, as Title VII forbids."); *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 603 (7th Cir. 2011) ("al-though [plaintiff] disagreed with his negative evalua-tions, that does not mean that the evaluations were the result of unlawful discrimination"); *cf. Malacara v. City of Madison*, 224 F.3d 727, 731 (7th Cir. 2000) ("An employer may hire or refuse to hire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not

for discriminatory reason.") (internal quotation marks omitted).

## III.  CONCLUSION

We AFFIRM the district court's entry of summary judgment in favor of the American Red Cross.