# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2113

JAMES D. SOLON,

*Plaintiff-Appellant,*

v.

LARRY S. KAPLAN, individually and as partner
in the firm of KAPLAN, BEGY & VON OHLEN;
ROBERT C. VON OHLEN, individually and as
partner in the firm of KAPLAN, BEGY & VOH OHLEN;
FRED C. BEGY, III, individually and as partner
in the firm of KAPLAN, BEGY & VOH OHLEN; *et al.,*

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 2888—**Samuel Der-Yeghiayan**, *Judge.*

———————

ARGUED DECEMBER 9, 2004—DECIDED FEBRUARY 15, 2005

———————

Before FLAUM, *Chief Judge*, and BAUER and WILLIAMS,
*Circuit Judges.*

FLAUM, *Chief Judge.* James Solon filed this suit under
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e
*et seq.*, alleging that his former law partners Larry Kaplan,
Robert von Ohlen, and Fred Begy terminated his interest in
their firm in retaliation for his opposition to sexual harass-
ment. The district court granted summary judgment in
favor of defendants, concluding inter alia that Kaplan was

not an "employee" as defined by 42 U.S.C. § 2000e-3(a) and therefore not protected by Title VII. For the reasons stated herein, we affirm.

## I.  Background

On September 1, 1989, Solon joined the law firm of Adler, Kaplan & Begy as a partner. The partnership agreement, as amended January 1, 1993, named Solon as one of eight general partners. It provided that each general partner would fund an equal share of the firm's capital interest, be liable for an equal proportion of the firm's debts, and have an equal voice in the management of the firm and the conduct of its business. The allocation of income among the general partners, the need for additional capital contributions, and financial commitments in excess of $5,000 would be decided by a majority vote of the general partners, with each entitled to cast one vote. A two-thirds vote would be required for amendments to the partnership agreement, dissolution of the firm, or the involuntary termination of any general partner. New general or special partners could be brought into the firm only by unanimous vote. Special partners would have no equity interest or voting rights, and could be terminated by a simple majority vote of the general partners.

As a general partner, Solon paid a total of $50,000 in capital contributions to the firm over the course of his tenure. He received an allocated share of its income, attended compensation meetings with the other general partners, and was privy to daily cash reports and other sensitive financial information. None of the special partners or associates received these benefits.

On December 31, 1994, three general partners voluntarily left the firm. Solon drafted a separation agreement specifying that he and four others would continue as general partners under the terms of the 1993 partnership agree-

ment. The next day, the firm changed its name to Kaplan & Begy, and plaintiff was named managing partner. In 1996, another general partner departed, leaving Solon, Larry Kaplan, Fred Begy, and Robert von Ohlen as the remaining general partners. In 1997, von Ohlen was added as a named partner and the firm became Kaplan, Begy & von Ohlen ("KBV"). As of January 1, 1998, a total of twenty-one lawyers, including general partners, special partners, and associates, worked at the firm.

As managing partner, Solon was the only general partner authorized to draw on all of the firm's bank accounts. He signed checks in that capacity to pay rent and distribute profits. He had extensive knowledge of KBV's financial condition, handled its relationship with LaSalle Bank, and applied for and signed financing agreements as managing partner. He also served as the point of contact with the firm's landlord and acted as trustee of the firm's 401(k) account. On January 18, 1998, Solon stepped down as managing partner, but continued to direct some administrative matters, signing a revolving letter of credit with LaSalle Bank, and looking for new office space when the firm's lease expired.

In August 1998, Kaplan and von Ohlen approached Begy about their desire to terminate Solon's interest as a general partner. Over lunch one afternoon, the three agreed to remove plaintiff as a general partner, but considered allowing Solon to stay on as a salaried administrator or to work for Begy as an independent contractor. In October, Begy advised Solon of the partners' decision to terminate his interest as of December 31, 1998. Begy presented Solon with the options of working as an administrator or an independent contractor. Solon rejected these alternatives and left the firm in January 1999.

Solon contends that von Ohlen pressed for his ouster because he had spoken out against von Ohlen's alleged

sexual harassment of two of the firm's secretaries. Kaplan and von Ohlen assert that they wanted to remove Solon from the partnership because they had lost confidence in his legal, rainmaking, and administrative skills. They state that von Ohlen never sexually harassed either secretary, and that Solon could not have reasonably believed to the contrary. Begy asks us to affirm on the ground that Title VII does not protect Solon, and takes no position regarding whether von Ohlen harbored retaliatory motives.

Plaintiff filed this suit against the firm and von Ohlen, Kaplan, and Begy individually. His amended complaint alleges violations of Title VII, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and supplemental state-law claims. Begy, who was pushed out of the partnership after Solon was removed, filed cross-claims against von Ohlen, Kaplan, and the firm for indemnification, partner indemnification, and a declaratory judgment.

The district court granted summary judgment in favor of defendants on the Title VII and ADEA claims. It concluded that: (i) Solon was an employer, not an employee, and therefore was not protected by Title VII or the ADEA; and (ii) plaintiff failed to establish a prima facie case under either statute. The district court declined to exercise supplemental jurisdiction over Solon's state-law claims or Begy's cross-claims, and dismissed them without prejudice. Solon appeals the grant of summary judgment as to his Title VII claim only.

## II.  Discussion

Summary judgment is appropriate where the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review a district court's grant of summary judgment de

novo, construing all facts and reasonable inferences in favor of the non-moving party. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).

Section 704(a) of Title VII provides in relevant part that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The parties agree, and we assume without deciding, that Title VII does not protect employers against retaliation. *See EEOC v. Severn Trent Servs., Inc.*, 358 F.3d 438, 445 (7th Cir. 2004) (stating in dicta that Title VII does not prohibit retaliation against employers). *Cf. Schmidt v. Ottawa Med. Ctr.*, 322 F.3d 461, 468 (7th Cir. 2003) (ADEA does not protect employers); *EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 698 (7th Cir. 2002) (same). Solon argues that the district court erred in granting summary judgment, however, because there are genuine factual disputes regarding whether he is an employee rather than an employer, and whether he established a prima facie case of retaliation. We agree with the district court that Solon is an employer as a matter of law, and do not reach the latter issue.

Title VII defines "employee," subject to exceptions not relevant here, as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Recent Supreme Court precedent sheds light on this circular definition. *See Clackamas Gastroenterology Assocs. v. Wells*, 538 U.S. 440 (2003). In *Clackamas*, the Court addressed whether shareholder-directors of a professional corporation counted as "employees" towards the fifteen-employee threshold for covered employers under the Americans with Disabilities Act of 1990 ("ADA"). *Id.* at 442; 42 U.S.C. § 12111(5). Because it found the ADA's definition of "employee" circular, the Court looked to the common-law definition of the master-servant relationship, focusing on the element of control. *Clackamas*,

538 U.S. at 448. It highlighted six non-exhaustive factors as relevant to whether the shareholder-directors were employees:

> Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work

> Whether and, if so, to what extent the organization supervises the individual's work

> Whether the individual reports to someone higher in the organization

> Whether and, if so, to what extent the individual is able to influence the organization

> Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts

> Whether the individual shares in the profits, losses, and liabilities of the organization.

*Id.* at 449-50 (quoting 2 Equal Employment Opportunity Commission Compliance Manual § 605:0009 (2000)). "[W]hether a shareholder-director is an employee depends on 'all of the incidents of the relationship . . . with no one factor being decisive.'" *Id.* at 451 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)).

The factor test announced in *Clackamas* applies to this case. Although the Court focused on the meaning of the term "employee" under the ADA rather than Title VII, both statutes define "employee" in nearly identical language. *See* 42 U.S.C. §§ 12111(4), 2000e(f) (both defining "employee," subject to exceptions not relevant here, as "an individual employed by an employer"). The Court signaled that its analysis would extend to Title VII cases by noting that it was resolving a conflict among the Circuits that was "not confined to the particulars of the ADA." *Clackamas*, 538 U.S. at 444 n.3 (citing Title VII and ADEA cases as evi-

dence of the split). Moreover, the framework is not limited to the narrow question of whether a shareholder-director is an employee. The six factors were selected because they provided guidance in resolving the more general issue of whether an individual "is an employee or, alternatively, the kind of person that the common law would consider an employer." *Id.* at 445 n.5. Indeed, the source of the factors—an EEOC compliance manual— identifies them as relevant to whether "partners, officers, members of boards of directors, and major shareholders qualify as employees." *Id.* at 449 (citing 2 EEOC Compliance Manual §§ 605:0008-605:00010 (2000)). The Court also made clear that its test would determine whether someone was an employee both for purposes of the fifteen-employer threshold and in deciding whether a plaintiff could bring a claim. *See Clackamas*, 538 U.S. at 446 n.6. *Cf. Schmidt*, 322 F.3d at 464 (cited with approval in *Clackamas*, 538 U.S. at 446 n.6) (holding one framework applicable to both questions). In sum, the analysis presented in *Clackamas* applies to the question presented here: whether a partner is an employee entitled to sue for retaliation under Title VII.

Turning to the facts of this case, no reasonable juror could find that Solon was an employee of the firm. By 1998, Solon was one of only four general partners. The partnership agreement allowed for his involuntary termination only by a two-thirds vote of the general partners, meaning that the other three had to agree unanimously to remove him. Holding one quarter of the voting power, Solon also exercised substantial control over how to allocate the firm's profits, and whether to require additional capital contributions, make financial commitments, amend the partnership agreement, and dissolve the firm. Because special or general partners could be added to the firm only by a unanimous vote of the existing general partners, Solon possessed a unilateral veto power over new admissions. In addition to his voting rights, Solon held an equity interest

in the firm, shared in its profits, attended partnership meetings, and had access to private financial information. Each of these benefits distinguished him from the firm's special partners and associates. Solon's broad authority as trustee of the firm's 401(k) account and as its managing partner also supports the conclusion that he was an employer. And though he stepped down as managing partner a few months before being voted out of the firm, he continued to handle the firm's banking needs and land-lord/tenant issues.

Solon maintains, nevertheless, that he was not an employer because he exercised no real control as a general partner or managing partner. Plaintiff asserts that defendants ignored the partnership agreement so frequently that it no longer had any legal effect, and that any leverage conferred to him by the agreement was illusory. Solon identifies two instances when defendants allegedly failed to observe the terms of the agreement. First, plaintiff contends that defendants should have held a formal meeting to debate whether he would be removed from the firm. Instead, defendants met over lunch without notifying Solon, gave him no opportunity to defend himself, and never officially voted for his ouster. In fact, Solon asserts that only Kaplan and von Ohlen voted to remove him, while Begy dissented.

The partnership agreement, however, does not demand a formal meeting, notice, or a hearing before removing a general partner. Defendants' decision to proceed informally is not evidence that the agreement had no legal effect. Moreover, the evidence shows that Begy agreed to remove Solon. In a January 13, 1999 memorandum written by Solon, plaintiff recounts that Begy had notified him in an October 1998 meeting "that the partners had decided to terminate my equity interest in the firm," and that Begy had advised "that this decision had been reached after a series of partnership meetings." The memorandum states

that Solon and Begy met again on December 23, 1998 and January 12, 1999 to discuss the options of working as an administrator or independent contractor. During those meetings, Solon told Begy that the alternatives were unworkable "given the earlier decision to terminate my equity interest." It is undisputed that Solon never called for an official meeting to challenge his termination. Had Begy dissented, he would not have repeatedly advised Solon that the partners had terminated his interest, nor would plaintiff have accepted the sentiments of only two of the four general partners as final.

Second, Solon asserts that defendants routinely ignored the agreement when distributing firm profits. For example, he alleges that he was barred from attending some end-of-year partner compensation meetings. The record shows, however, that Solon was excluded from only one compensation meeting that occurred in 1999, after he had been terminated as a general partner and been divested of his right to attend. Solon also testified during his deposition that decisions made at compensation meetings that he attended were sometimes later changed at informal meetings in his absence. Nevertheless, plaintiff concedes that he was given an opportunity to call for a meeting of all of the general partners to revisit the issue. He did not request a meeting because he believed he could not persuade the others to change their minds. Neither example cited by Solon is evidence that defendants ignored the partnership agreement, much less did so routinely.

Plaintiff also argues that he had no control over the firm because he was supervised closely by the other partners, who made all of the key decisions about how to staff cases, bring in new business, and steer the firm without consulting him. The record does not support this contention. Solon had substantial control over the firm; control that he exercised in fact as managing partner, and control that

he had the right to exert by virtue of the partnership agreement. Plaintiff's assertion that he consulted with his fellow partners before making major decisions may demonstrate that he was passive, but it does not show that he was powerless. Nor does his contention that he was outvoted undermine the conclusion that he was an employer. *See Schmidt*, 322 F.3d at 476 ("[T]he mere fact that lately [plaintiff's] preferences on shareholder-compensation proposals have not secured the majority opinion of his fellow shareholders does not alter the fact that with each vote he has exercised this right to control. Even though [plaintiff] rejected the current plan because he would be affected by its passage, he nevertheless had the opportunity to participate in revising and voting on it.").

Plaintiff was one of four general partners who, by virtue of his voting rights, substantially controlled the direction of the firm, his employment and compensation, and the hiring, firing, and compensation of others. He played an active role in the operation of the firm as trustee of its 401(k) account, as managing partner, and informally thereafter. Under the facts of this case, he was an employer as a matter of law.

### III.  Conclusion

For the reasons stated herein, we AFFIRM the district court's grant of summary judgment.

No. 04-2113 11

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*