In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 13-3724, 14-1256 & 14-1257

LINDA BLUESTEIN, M.D.,

*Plaintiff-Appellant*,

*v.*

CENTRAL WISCONSIN
ANESTHESIOLOGY, S.C.,

*Defendant-Appellee.*

and

APPEAL OF: JANET L. HEINS,

*Attorney.*

Appeals from the United States District Court for the
Western District of Wisconsin.
No. 3:12-cv-00322-bbc— **Barbara B. Crabb**, *Judge.*

ARGUED SEPTEMBER 17, 2014 — DECIDED OCTOBER 15, 2014

Before FLAUM, KANNE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Linda Bluestein, M.D., sued Central
Wisconsin Anesthesiology, S.C. ("Central Wisconsin"), for

discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The district court concluded that Bluestein, a full partner, shareholder, and member of the board of directors of Central Wisconsin, was an employer rather than an employee at the service corporation, and was thus ineligible for the protections of those statutes. The court also found that Bluestein's claims would fail as a matter of law on the merits, and so the court granted summary judgment in favor of Central Wisconsin. The court also ordered Bluestein and her attorney, Janet L. Heins, to pay attorneys' fees to Central Wisconsin for pursuing a frivolous lawsuit, pursuant to 42 U.S.C. § 2000e-5(k). Bluestein appeals the summary judgment in favor of Central Wisconsin. Bluestein and Heins appeal the award of attorneys' fees. Central Wisconsin also seeks attorneys' fees and costs pursuant to Federal Rule of Appellate Procedure 38 for defending this appeal. We affirm the judgment and the award of fees in the district court. We decline to award additional attorneys' fees.

## I.

Central Wisconsin is a service corporation organized under Wisconsin law to engage in the practice of providing anesthesia services. *See* Wis. Stat. §§ 180.1901 - 180.1921. Bluestein is an anesthesiologist who began working for Central Wisconsin in 1996 on a part-time basis. Her initial employment agreement identified her as an employee, and she worked in that capacity for approximately two and a half years. As of January 1, 1999, Bluestein became a full partner of Central Wisconsin as well as a shareholder and member of the board of directors, which is

comprised of all of the physician-shareholders. As a share-
holder, she had a vote on all matters coming before the board.
After a June 1999 board vote, Bluestein began receiving a
quarterly distribution equal to that of the other shareholders.
In 2000, she was elected to the position of secretary-treasurer
of the board, a post she held for approximately three years.
From 2007 to 2010, she served as the chair of the compliance
committee of the board.

The corporation was organized so that the physician-
shareholders shared profits and losses equally.[1] Board- and
committee-approved policies applied uniformly to all of the
shareholders and covered everything from compensation to
vacation. Corporate bylaws provided when and how board
meetings were to be conducted. Most issues affecting the
shareholders were resolved by a majority vote. For example,

---

[1] Although Bluestein denies in her briefs that profits were shared equally,
a review of her citations to the record reveals that she has no evidence to
support this assertion. Federal Rule of Civil Procedure 56 requires that a
party genuinely disputing a fact must support that assertion by citing to
particular parts of the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)
(in cases where the nonmoving party will bear the burden of proof at trial
on a dispositive issue, when a summary judgment motion was properly
made in reliance on the pleadings, depositions, answers to interrogatories,
and admissions on file, Rule 56(e) requires the nonmoving party to go
beyond the pleadings and by her own affidavits, or by the depositions,
answers to interrogatories, and admissions on file, designate specific facts
showing that there is a genuine issue for trial). *Majors v. General Elec. Co.*,
714 F.3d 527, 540 (7th Cir. 2013) (conclusory statements unsupported by the
record are insufficient to defeat summary judgment). We will not credit
those parts of Bluestein's version of the facts that are not supported by any
evidence in the record.

when Bluestein wished to change her part-time status from 80% to 90% in 2004, that change required approval from a majority of the board. Bluestein participated in many meetings where key company issues were decided by a majority vote, including setting wage increases for non-physician staff, setting anesthesia fees and policies, changing office computer technology, changing the shareholders' deferred compensation and increasing paid vacation for the shareholders from ten weeks to twelve weeks per year.

In the fall of 2009, Bluestein sustained injuries in a kayak accident. She developed ischiogluteal bursitis, proximal hamstring tendinopathy, sciatica and sacral nerve root cyst. These conditions made it difficult for her to complete her work as an anesthesiologist. Over the next several months, she intermittently took approved time off to rest and recover but she did not heal enough to return to work at full strength. In August 2010, she sent her partners a letter setting forth her status:

> Dear colleagues:
>
> As you are probably aware, I am continuing to struggle with a condition with my hamstring tendon.
>
> I have just finished my recommended month off to allow for healing and recovery. Unfortunately, this has not led to the improvement we had hoped for. I have been advised by my treating doctor that the best course of action at this time would be for me to take an open ended medical leave of absence in order that I may continue to pursue the necessary

> treatment options without exacerbating my condition further. At this time, my treating doctor and I share in the realization that I am unable to meet the physical demands of practicing anesthesia. I truly apologize for any and all inconveniences that my disabled condition has caused you.
>
> Thank you for your understanding and patience. I hope to return to work soon.

R. 45-33. After requesting this open-ended leave from her fellow physician-shareholders, the board voted to deny the request. The board then held a second vote, presenting shareholders with two additional options. The first would have granted Bluestein a four-month leave of absence on the condition that she would be terminated if she could not perform her duties as an anesthesiologist without restriction upon her return. Under the second option, Bluestein would be allowed to resign as of August 31, 2010, but would be terminated if her letter of resignation was not received by September 16, 2010. Four shareholders voted in favor of the four-month leave and twelve chose the latter option. When Bluestein did not resign by September 16, 2010, she was terminated the next day. Shortly thereafter, the board voted to give Bluestein her deferred compensation as calculated by the firm's deferred compensation formula.

Bluestein sued Central Wisconsin for violations of the Americans With Disabilities Act ("ADA"), the Rehabilitation Act and Title VII. The district court granted Central Wisconsin's motion for summary judgment on multiple grounds. First, the court concluded that Bluestein was an employer at

Central Wisconsin rather than an employee, and thus was not entitled to the protection of the statutes at issue. Although that conclusion was fatal to all of Bluestein's claims, the court also considered each discrimination claim on its merits. The court rejected Bluestein's ADA claim because she had produced no evidence to demonstrate that she had a substantial limitation in any major life activity and thus was not disabled as that term is defined by the statute. Moreover, she had notified her colleagues that she was unable to perform the essential functions of her job and therefore was not a qualified individual with a disability unless there was a reasonable accommodation that would allow her to fulfill her job duties. The court found that she failed to demonstrate that a four-month leave would have enabled her to return to work and that the open-ended leave request was unreasonable as a matter of law. The court similarly concluded that her claim of sex discrimination failed because she produced no evidence that the disabled male colleague to whom she compared herself was similarly situated. The court summarily rejected the Rehabilitation Act claim because Bluestein lacked evidence that Central Wisconsin receives federal financial assistance, a requirement for recovery under that statute. In response to Central Wisconsin's motion for attorneys' fees, the court agreed that Bluestein's lawsuit was "frivolous, unreasonable and without foundation." *Bluestein v. Central Wisconsin Anesthesiology, P.C.*, 2014 WL 61157, \*2 (W.D. Wis. Jan. 8, 2014). Acknowledging that an award of fees should be rare in discrimination cases, the court nevertheless concluded that fees were appropriate in this case because "a reasonable amount of legal research should have alerted counsel to the implausibility of success on any of

plaintiff's claims of discrimination." *Id*. The court found that it was unreasonable for Bluestein to think that she could prevail on "clearly frivolous claims of discrimination" because she should have known she was not an "employee" of Central Wisconsin and because she had admitted to her colleagues that she could not perform the essential functions of her job. *Id*. The court therefore ordered Bluestein and her attorney to pay Central Wisconsin's attorneys' fees. Bluestein and her counsel appeal.

## II.

On appeal, Bluestein contends that she was an employee for the purposes of the statutes at issue. She also maintains that she has raised genuine issues of material fact regarding her disability and sex discrimination claims. Finally, she asserts that the district court abused its discretion in awarding attorneys' fees to the defendant. We review the district court's grant of summary judgment *de novo*, examining the record in the light most favorable to Bluestein and construing all reasonable inferences from the evidence in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Naficy v. Illinois Dep't of Human Servs.*, 697 F.3d 504, 509 (7th Cir. 2012); *Norman–Nunnery v. Madison Area Technical Coll.*, 625 F.3d 422, 428 (7th Cir. 2010). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Naficy*, 697 F.3d at 509. Central Wisconsin sought and was granted fees as a prevailing party pursuant to 42 U.S.C.

§ 2000e‑5(k).[2] We review the district court's grant of attorneys' fees under that provision for abuse of discretion. *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421 (1978); *Munson v. Milwaukee Bd. of School Directors*, 969 F.2d 266, 269 (7th Cir. 1992) (district courts are given wide latitude to determine whether an award of fees to prevailing defendants is appropriate in a given case, and we will reverse a decision to award fees to a prevailing defendant only upon a showing of abuse of discretion by the district court).

**A.**

The threshold question for Bluestein's claims is whether she is an "employee" protected by the statutes at issue. Each of the statutes invoked by Bluestein protects employees (and others not at issue here, such as job applicants) from discrimination by employers. *See* 42 U.S.C. § 12112(a);[3] 29 U.S.C. § 794(d);[4]

---

[2] That subsection provides, in relevant part: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee … as part of the costs[.]"

[3] The statute provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

[4] That section of the Rehabilitation Act directs that courts employ the standards applied under the ADA to determine whether the Rehabilitation Act has been violated in a complaint alleging employment discrimination.

42 U.S.C. 2000e-2.[5] But the definition of "employee" in each statute is vague and circular. *See* 42 U.S.C. § 12111 ("The term 'employee' means an individual employed by an employer."); 42 U.S.C. § 2000e(f) (same). *See also Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 444 (2003) (noting that the definition of "employee" in the ADA is circular). "Employer" is defined in the ADA as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 12111(5)(A).

When faced with the question of determining the meaning of the term "employee" in the context of the ADA, the Supreme Court reasoned that, when a statute does not provide a working definition, the courts should turn to the common law test for determining who qualifies as an employee. *Clackamas*, 538 U.S. at 444-45. *Clackamas* presented a scenario that was remarkably similar to the circumstances at Central Wisconsin. In that case, a bookkeeper sued a medical clinic for disability discrimination under the ADA. Because the ADA applies only to employers whose workforce includes fifteen or more

---

[5] The statute provides: "It shall be an unlawful employment practice for an employer– (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

employees, it was necessary to determine how many "employees" the clinic employed during the relevant time period. This in turn depended on whether the "four physicians actively engaged in medical practice as shareholders and directors of a professional corporation should be counted as 'employees.'" 538 U.S. at 442. The Court noted that it had previously adopted the common law test to determine who qualifies as an employee for the purposes of the Employee Retirement Income Security Act of 1974 ("ERISA"). But the defendant-clinic in *Clackamas* encouraged the Court to reject the common law analysis in the ADA context and instead conclude that the shareholder-directors were more analogous to partners in a partnership than to shareholders in a corporation. Partners, the clinic argued, were employers rather than employees. The Court rejected the clinic's assertion, noting that partnerships sometimes include hundreds of members, some of whom would easily qualify as employees when control is concentrated in a small number of managing partners. 538 U.S. at 445-46.

Instead, the Court returned to the common law definition of "servant" in determining whether an individual is an employee. *Clackamas*, 538 U.S. at 448. Under the common law definition, a servant is a person whose work is controlled or is subject to a right to control by the master. Based on the Restatement (Second) of Agency, §§ 2(2) and 220(2)(a), the Court remarked that the element of control should be the principal guidepost in assessing whether a person is an employee. 538 U.S. at 448. The Court then adopted a non-exclusive list of six factors designed to reflect the common law element of control:

Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;

Whether and, if so, to what extent the organization supervises the individual's work;

Whether the individual reports to someone higher in the organization;

Whether and, if so, to what extent the individual is able to influence the organization;

Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; and

Whether the individual shares in the profits, losses, and liabilities of the organization.

*Clackamas*, 538 U.S. at 449-50. In contrast,

an employer is the person, or group of persons, who owns and manages the enterprise. The employer can hire and fire employees, can assign tasks to employees and supervise their performance, and can decide how the profits and losses of the business are to be distributed. The mere fact that a person has a particular title—such as partner, director, or vice president—should not necessarily be used to determine whether he or she is an employee or a proprietor. … Nor should the mere existence of a document styled "employment agreement" lead inexorably to the conclusion that either party is an employee.

538 U.S. at 450. When deciding whether shareholder-directors were employees, no one factor should be decisive, the Court emphasized, but all aspects of the relationship should be considered. 538 U.S. at 451. *See also Smith v. Castaways Family Diner*, 453 F.3d 971, 977 (7th Cir. 2006) (no one factor is dispositive and a court must look to all aspects of the relationship between the shareholder-director and the organization to decide whether the shareholder-director exerts control or has the right to exert control over the organization).

With those standards in mind, the question for Bluestein is whether she raised a genuine issue of material fact on the issue of her status as an employee. As we noted above, she was a shareholder and member of the board of directors at Central Wisconsin, entitled to vote on all issues coming before the board and subject to the same board-and committee-approved policies as every other physician-shareholder of the service corporation. There were approximately sixteen physician-shareholders at the time of Bluestein's termination. Turning to the first part of the first factor, whether the organization can hire or fire the individual, the record demonstrated that hiring and firing decisions were made collectively by the shareholder-board members. Indeed, Bluestein herself voted on her own termination. *Clackamas*, 538 U.S. at 450 (an employer can hire and fire employees). That she was in the minority of that vote does not diminish her right of control on hiring and firing; the right to cast a vote equal to that of any other board member unequivocally indicates that Bluestein was an employer rather than an employee for the purposes of hiring and firing. *Solon v. Kaplan*, 398 F.3d 629, 634 (7th Cir. 2005) (shareholder's contention that he was outvoted does not undermine conclu-

sion that he was an employer when he had an equal right to vote); *Schmidt v. Ottawa Medical Center, P.C.*, 322 F.3d 461, 467 (7th Cir. 2003) (physician-shareholder with equal vote is employer notwithstanding his repeated inability to secure the majority opinion of his fellow shareholders).

Bluestein fares no better on the second part of the first factor, namely, whether the organization set the rules and regulations of the individual's work. Bluestein complains that, under various policies adopted by the board and its subcommittees, she could not unilaterally take a vacation day, set her own schedule, assign cases to herself, or decide when she could take her lunch or a break. Again, the undisputed record demonstrates that it was not the "organization" but the physician-shareholders who collectively voted at board meetings on the rules and regulations that governed all of the staff. Bluestein herself participated in board meetings and committee meetings where she voted on issues relating to compensation, vacation policy and other workplace issues. Unlike the non-physician staff members at Central Wisconsin, as a full board member, Bluestein was one of the decision-makers who determined the rules and regulations that governed her own work and the work of others at the organization. Moreover, under the bylaws, any physician-shareholder who could secure the support of a sufficient number of board members could challenge and change those policies.

Turning to the second factor, whether the organization supervises the individual's work, Bluestein presented no evidence that anyone at Central Wisconsin supervised her work as an anesthesiologist. Bluestein asserts as evidence of supervision that she could not change her part-time work

schedule from 80% to 90% without board approval. Nor could she unilaterally take a leave of absence or decide upon and implement her own disability accommodations. We note first that these are not matters relating to the supervision of her work as an anesthesiologist but are more in the nature of the general office rules and policies that we addressed in the first factor. The salient point is that Bluestein could point to no supervisor at Central Wisconsin who dictated how Bluestein practiced anesthesiology. As a physician, she determined how to complete the specific tasks of her work. Bluestein has produced no evidence that anyone at Central Wisconsin had a right to control the details of her work. *See Clackamas*, 538 U.S. at 448 (in distinguishing between servants and independent contractors, the extent of control one may exercise over the details of the work of the other is a primary consideration); *Schmidt*, 322 F.3d at 467 (where service corporation's board assigns patients to physicians, and physician then has absolute authority for the treatment of those patients, the physician is an employer rather than an employee, especially where the physician exercises as much control over his employment as any other member of the physician-shareholder board). Bluestein thus fails to raise a genuine issue of material fact on the question of supervision.

Bluestein treats the third factor—whether the individual reports to someone higher in the organization—as essentially co-extensive with the test for supervision. She asserts that one physician, Dr. Mason, was the chair of the board for eleven years, that he intimidated and discouraged others from running for the post of chair, and that he failed to follow the bylaws requirement of holding an election every two years.

Bluestein claims that she was required to seek approval from Mason or another physician for days off, and that a committee of which she was not a member determined doctors' schedules and patient assignments. But all of this was the result of the collective action (or inaction) of Bluestein's fellow physician-shareholders. That Bluestein was in a minority position on how the service corporation organized schedules, patient assignments and time off is irrelevant to her right to an equal vote on these issues as a shareholder. None of this evidence addresses whether she "reported to" someone higher in the organization. Instead, the evidence demonstrates that each physician-shareholder had an equal vote in matters affecting the organization. That some functions or control may have been delegated to the board chair is irrelevant because Bluestein had an equal vote in the delegation. Nor does it matter for the purposes of determining her status as an employee that Dr. Mason appeared to have great influence with his colleagues. Under the bylaws, the shareholders were free to delegate authority to one of their members and just as free to retract that delegation. But each shareholder, including Bluestein, had an equal vote. Once again, that she was in the minority view does not detract from her right of control.

The fourth factor is whether and to what extent an individual is able to influence the organization. Bluestein asserts that she had no authority, control or influence over the board. But she bases this assertion on the same evidence that we found inadequate above. She does not dispute on appeal that she was a full member of the board and an equal shareholder entitled to vote on all matters coming before the board. Instead, she essentially alleges that she frequently found herself in the

minority position on how her colleagues decided to run the business. Not winning the vote is not the same as not having a vote, however, and it is her opportunity for shared control that counts when determining whether she was an employer or employee. *See Schmidt*, 322 F.3d at 468 ("when an individual claimant-shareholder enjoys the opportunity for shared control of the closely held professional corporation, including the opportunity to share in its profits, we will treat him or her as a bona fide employer for purposes of the ADEA.").

As the district court noted, Bluestein's situation was markedly different from that of the thirty-two partners demoted from full partnership in *EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696 (7th Cir. 2002). In that case, a large law firm consisting of more than 500 partners demoted thirty-two partners who then sued the firm under the Age Discrimination in Employment Act. Unlike Central Wisconsin, the law firm was controlled by a small, self-perpetuating executive committee that held the power to hire, fire, promote and determine the compensation of the partners who were not on the committee. Although all partners shared the firm's liabilities in proportion to their share of capital in the firm, profits were distributed according to a formula determined by the executive committee. All of the firm's committees were subject to the control of the executive committee, which appointed all of the members of other committees. The partners did not elect the members of the executive committee; instead, the executive committee determined its own membership. The thirty-two demoted partners thus had no voting power and no control over their fate at the firm. The only issue on which the entire partnership voted related to a merger with another firm. Otherwise, the

executive committee controlled the running of the firm. We held that not all partners should be deemed employers as a matter of law. 315 F.3d at 702. Rather, some shareholders of a professional corporation may be considered employees for the purposes of federal anti-discrimination law. 315 F.3d at 703. The manner of sharing profits and liabilities, the partners' ability to control their own fates, and the amount of control partners had to conduct their own work all contributed to the analysis of whether these thirty-two partners were employers or employees. We remanded to the district court to allow for discovery on those issues.

In contrast, Central Wisconsin was run by a sixteen-member board that consisted of all of the physician-shareholders, not some exclusive subset of them. All major decisions were put to a vote and each shareholder had an equal vote. Both profits and losses were shared equally. Bluestein enjoyed the same right of control that every other physician-shareholder possessed. She possessed no more or less of a right to influence the organization than any other partner.

Turning to the fifth factor—whether the parties intended the individual to be an employee, as expressed in written agreements or contracts—we will assume that the contract Bluestein signed before she became a full shareholder was still in effect at the time of her termination from the service corporation. That contract referred to Bluestein as an employee. Bluestein also notes that she received a W-2 form indicating her wages annually. But the *Clackamas* Court cautioned that "the mere existence of a document styled 'employment agreement' [should not] lead inexorably to the conclusion that either party is an employee." *Clackamas*, 538

U.S. at 450-51. And we found that the physician-shareholder in *Schmidt* was an employer even though he had an employment agreement with the professional corporation that described him repeatedly as an employee and even though he received a base salary reported on a W-2. Schmidt was an employer, we found, because he shared in the management and control of the professional corporation throughout his career, and was a shareholder, a corporate officer, a board member and a director throughout his tenure. As a shareholder, he possessed an equal vote in all matters put to a shareholder vote and had a voice in all matters put before the board. 322 F.3d at 467. Like Bluestein, he frequently found himself in the minority position on the votes of his fellow shareholders but that did not alter the fact that he had the right to exercise control with each vote and had an opportunity to participate in revising and voting on board plans with which he disagreed. *Id*. Like Bluestein, Schmidt did not possess sole authority over the conditions of his employment but rather shared that authority in equal parts with other members of the board. Like Bluestein, Schmidt exercised as much control over his employment as any other shareholder. 322 F.3d at 467. These factors, considered as a whole, overcame the simple labeling of Schmidt as an employee in the employment agreement. 322 F.3d at 468 ("when an individual claimant-shareholder enjoys the opportunity for shared control of the closely held professional corporation, including the opportunity to share in its profits, we will treat him or her as a bona fide employer for purposes of the ADEA"). Under our reasoning in *Schmidt*, the language in Bluestein's contract cannot overcome the reality of her position in the professional corporation.

Finally, Bluestein failed to raise a genuine issue of material fact on the sixth factor, whether an individual shares in the profits, losses and liabilities of the organization. In addressing the sixth factor, Bluestein baldly asserts in her brief that she did not share equally in the profits and losses of Central Wisconsin. But a review of her citations to the record reveals no evidence in support of that assertion. She therefore raises no genuine issue of material fact on the sixth factor. *See supra* note 1.

Taking all six factors as a whole, we conclude that Bluestein was an employer as a matter of law. In sum, she was a full physician-shareholder and board member in a small medical professional corporation. She had an equal right to vote on all matters coming before the board, shared equally in the firm's profits and liabilities, and participated in decisions to hire and fire employees. She even voted on her own termination. Although she was subject to general workplace policies regarding her hours, vacation, scheduling and patient assignments, all the physician-shareholders were subject to the same policies, and all had an equal right to influence those policies. She reported to no one and the details of her work as an anesthesiologist were not supervised or controlled by anyone at the firm. Although she often found herself in the minority position among her fellow physician-shareholders, it is her right of control that matters to the analysis. Our conclusion that she was an employer is fatal to all of her discrimination claims. We therefore need not consider the merits of the individual discrimination claims and we affirm summary judgment in favor of Central Wisconsin.

**B.**

Bluestein and her lawyer also appeal the district court's award of attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k), a determination that we review for abuse of discretion. *Christiansburg Garment*, 434 U.S. at 421; *Munson*, 969 F.2d at 269. "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment*, 434 U.S. at 421.

In analyzing the request for fees, the district court recounted its conclusions on summary judgment: (1) that the undisputed facts demonstrated that Bluestein was an employer rather than an employee; (2) that she failed to produce any evidence that Central Wisconsin received financial assistance from the federal government, a requirement for suits under the Rehabilitation Act; (3) that she did not demonstrate that she was disabled within the meaning of the ADA because she produced no evidence of a *substantial* limitation in a major life activity; (4) that she did not show what reasonable accommodation the defendant could have provided her; (5) that she did not demonstrate that she was a "qualified individual" under the ADA and instead failed to acknowledge her admission to her fellow shareholders that she was unable to meet the physical demands of practicing anesthesia; (6) that she did not establish that the extended or indefinite leave of absence she requested was a reasonable accommodation in light of circuit law to the contrary; and (7) that she did not raise a genuine issue of material fact on her claim of sex discrimination. The court also noted that a reasonable amount of legal research

should have alerted counsel to the implausibility of success on the merits of any of her claims. The combination of these factors led the court to conclude that Bluestein's suit was frivolous, unreasonable and without foundation, and that an award of fees was appropriate in this instance.

Bluestein cites "two glaring features" of the district court record that she contends require reversal of the award of fees. First, the district court denied Central Wisconsin's motion to dismiss the case, and second, neither the court nor the defendant ever hinted prior to summary judgment that they considered the case frivolous. The motion to dismiss, however, was based not on the merits of the suit but on the plaintiff's failure to cooperate with discovery. The court denied that motion because it concluded that lesser sanctions would be adequate to remedy the plaintiff's discovery violations. There was no reason for the court to address the merits of the suit at that time. And Bluestein does not explain why it was improper for the defendant to await the factual development of the case and summary judgment before seeking fees. In any case, the defendant alerted the plaintiff that it considered the suit frivolous when it filed its answer to the complaint early in the litigation. "Abuse of discretion exists only where the result is not one that could have been reached by a reasonable jurist or where the decision of the trial court strikes us as fundamentally wrong or is clearly unreasonable, arbitrary, or fanciful." *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 758 (7th Cir. 2005). A reasonable jurist could conclude that Bluestein's suit was frivolous, unreasonable and without foundation, and we therefore affirm the award of attorneys' fees.

## C.

Finally, Central Wisconsin has moved for attorneys' fees on appeal pursuant to Federal Rule of Appellate Procedure 38. That rule provides that if "a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. An appeal is frivolous within the meaning of Rule 38 when it is prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy. *Wachovia Securities, LLC v. Loop Corp.*, 726 F.3d 899, 909-10 (7th Cir. 2013); *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 412 (7th Cir. 1997); *Flexible Mfg. Systems Pty. Ltd. v. Super Products Corp.*, 86 F.3d 96, 101 (7th Cir. 1996). *See also Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 331 (7th Cir. 1995) (an appeal is frivolous for the purposes of Rule 38 when the result is obvious or when the appellant's arguments are wholly without merit; at times, we have also required some evidence of bad faith before finding that sanctions should be imposed). Rule 38 is permissive rather than mandatory, and so we may decline to impose fees even if we find that an appeal is frivolous. *See e.g. Lorentzen*, 64 F.3d at 331. Poor judgment may have driven the appeal here but we see no evidence of bad faith, harassment or obstinacy. *Lorentzen*, 64 F.3d at 331. The sanctions below were substantial and no useful purpose would be served in ordering the plaintiff to pay further attorneys' fees to Central Wisconsin. The plaintiff shall bear the defendant's costs on appeal.                    AFFIRMED.