In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3027

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL A. KNOLL and
DAX G. SHEPHARD,

*Defendants.*

APPEAL OF: BOB HENSON,        *Intervenor-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
Nos. 1:12-cr-00102-TWP-DML-2 & 43 — **Tanya Walton Pratt**, *Judge.*

SUBMITTED FEBRUARY 24, 2015[*] - DECIDED MAY 11, 2015

---

[*] The government included in its brief a statement indicating that oral argument is not necessary, *see* Fed. R. App. P. 34(a)(1) and Circuit Rule 34(f), and the appellant subsequently moved to waive oral argument. Upon review of the briefs and the record and consideration of the standards set forth in Fed. R. App. P. 34(a)(2), the court determined that oral argument is unnecessary to the resolution of this appeal, and granted the appellant's motion. The appeal has therefore been submitted on the briefs and the

(continued...)

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.*  Michael Knoll and Dax Shephard were members of the Outlaws Motorcycle Club ("Outlaws"). Both men pled guilty to racketeering and Knoll also pled guilty to running an illegal gambling business. Both men agreed in their plea deals to forfeit certain real and personal property that was used in the crimes. Bob Henson intervened to object to the forfeiture of property in which he claimed an interest. Henson now appeals the district court's grant of summary judgment in favor of the government, and we affirm.

**I.**

From approximately May 2009 through July 2012, the Outlaws, true to their name, were a very busy criminal organization. This case began with a forty-nine count indictment that charged fifty-one individuals (all members of the Outlaws) with racketeering, mail and wire fraud, money laundering, drug trafficking, extortion, running an illegal gambling business, witness tampering and firearms offenses, among other things. The indictment sought the forfeiture of real and personal property from Knoll, Shephard and some of their fellow Outlaws on the basis of the racketeering count. *See* 18 U.S.C. §§ 1962 and 1963. Specifically, the indictment sought the forfeiture of real property located at 305 North Jefferson Avenue and 2204 East New York Street, both in Indianapolis,

---

[*] (...continued)
record.

Indiana ("Indianapolis Properties"); as well as real property located at 1202 West Main Street, Fort Wayne, Indiana ("Fort Wayne Property").

In his plea agreement, Knoll agreed to forfeit any interest he had in the Indianapolis Properties, any firearms found at those properties and any items bearing the name or insignia of the Outlaws found at those properties. Shephard agreed to forfeit his interest in both the Indianapolis Properties and the Fort Wayne property, as well as any firearms, currency and items bearing the name or insignia of the Outlaws found at those properties. For both Knoll and Shephard, the district court granted the government's motions for forfeiture, in each case entering a "Preliminary Order of Forfeiture." Those Preliminary Orders directed the government to comply with the due process requirements of *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993), by affixing a copy of the court's order in a conspicuous place on the property, and by leaving a copy of the order with the person having possession or the person's agent. The court further ordered the government to publish notice of the Preliminary Orders, alerting anyone other than the defendants having or claiming a legal interest in the property to file a petition with the court within thirty days. *See* 18 U.S.C. § 1963(l).

Bob Henson subsequently filed intervenor petitions—one in Knoll's case and one in Shephard's case—claiming an interest in the Indianapolis Properties and the Fort Wayne Property. When the government moved to dismiss the petitions because they were not filed under penalty of perjury, the district court granted Henson leave to file amended petitions. Henson then filed an amended, consolidated petition, claiming

a third-party interest in all of the properties. Specifically, Henson claimed that he was a resident of the properties as well as a member, trustee and officer of the Outlaws. He asserted that the Outlaws' interest in the properties was superior to that of the defendants. The court allowed discovery on the petition, and the government ultimately moved to compel Henson to disclose all evidence in his possession relating to the nature and extent of his right, title or interest in the Indianapolis Properties and the Fort Wayne Property.

In response, Henson filed a two-page statement titled "Bob Henson's interest in the Indianapolis (AOA) properties," which begins, inauspiciously:

> 1) Giving brothers a place to live
>
> 2) No one else wanted the responsibility because they were unwilling or scared.
>
> 3) Without leadership the other motorcycle clubs in town would be fighting and causing problems.

R. 2853-1. Henson noted eleven other factors he believed to be relevant to his interest in the properties, including the alarming revelation that "[a] major school bus stop for neighborhood children is in front of the clubhouse," and his belief that "[t]he club as a whole is not a criminal enterprise." Henson then moved on to more salient factors, under a section titled "Real Interest." That section reads in its entirety:

> 1) I made sure that business within our home was conducted as any other household.
>
> 2) I delegated chores (cooking, cleaning, etc.)

3) I delegated people to pay the bills monthly.

    a. Gas & Electric

    b. Property taxes

    c. Water/Sewage

    d. Cable

4) I have been the leader since the initial raid in 2012.

    a. I am a natural leader who has a way to make the inner-workings of our organization move without crime and/or violence.

    b. I am loyal

    c. Trustworthy

    d. I believe that we can have a motorcycle club and be productive citizens within the community.

Pursuant to 28 USC § 1746, I declare under the penalties of perjury that my stated interests in properties at 2202 – 2204 East New York Street and 305 North Jefferson Street, Indianapolis, Indiana are true and accurate as I am informed and believe.

R. 2853-1. Henson presented no other evidence in support of his interest in the properties.

Around the same time that he filed this statement, Henson moved for the court to allow Bradley Carlson to intervene as both an expert witness and an interested party. According to the motion, Carlson possessed "first-hand and considerable knowledge on the constitutional issues relative to forfeiture of memorabilia and personal effects seized by the Government

from the locations in this case and would seek participation as both an Interested Party and expert witness for Intervenors and as to the value of items seized by the government." R. 2842, at 2. The motion further explained that Carlson would assess the value of "rings, necklaces, belt buckles, pictures and photographs" seized by the government.

The government then moved for summary judgment on the ground that Henson had failed to present any evidence to establish a legal right, title or interest in the Indianapolis Properties or the Fort Wayne Property. The government also asserted that Henson's claimed interest did not arise until after the properties became subject to forfeiture, contrary to the timing requirements of the statute. The district court noted that the RICO statute allows challenges to forfeitures only by persons having an interest in the property at the time the crime was committed (or by bona fide purchasers for value, an exception not relevant here). Henson's personal statement asserted an interest that arose after the crimes were committed. The court also concluded that nothing in Henson's statement established a legal interest in the properties as opposed to an equitable interest. Finally, the court noted that Henson's statement did not mention the Fort Wayne Property at all. For all of those reasons, the district court granted the government's motion for summary judgment and denied as moot Henson's request to have Carlson testify as an expert witness. Henson appeals.

## II.

On appeal, Henson argues that the district court abused its discretion in refusing to allow Carlson to testify as an expert.

He also contends that the court erred in concluding that Henson lacked a sufficient interest in the properties, asserting that Henson's personal statement demonstrated a "possessory interest" sufficient to challenge the forfeiture. Finally, Henson asserts that the government failed to establish a connection between the properties seized and the crimes to which Knoll and Shephard pled guilty.

We review the district court's grant of summary judgment *de novo*, examining the record in the light most favorable to Henson and construing all reasonable inferences from the evidence in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Bluestein v. Central Wisconsin Anesthesiology, S.C.*, 769 F.3d 944, 950-51 (7th Cir. 2014); *Naficy v. Illinois Dep't of Human Servs.*, 697 F.3d 504, 509 (7th Cir. 2012). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Bluestein*, 769 F.3d at 951; *Naficy*, 697 F.3d at 509.

A third party challenging an order of forfeiture in a RICO case must establish by a preponderance of the evidence that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value
of the right, title, or interest in the property and was
at the time of purchase reasonably without cause to
believe that the property was subject to forfeiture
under this section;

18 U.S.C. § 1963(l)(6). Because Henson presented no evidence
to the district court regarding the Fort Wayne Property, and
because the burden rests on the petitioner to establish an
interest in forfeited property, we may summarily affirm the
district court's grant of summary judgment to the government
on the Fort Wayne Property. Therefore, only the Indianapolis
Properties are in dispute on appeal.

Henson claims an "equitable" interest in the Indianapolis
Properties created by his caretaking role for the Outlaws.
Henson contends that his personal statement, together with
Carlson's proposed expert testimony "would have established
Henson's interest as a caretaker all within the history and
tradition of the Outlaws relative to equitable property rights."
Brief and Required Short Appendix of Robert "Bob" Henson
("Henson Brief"), at 6. There are several problems with this
argument. First, Henson ignores the requirement of the statute
that the third party petitioner possess a right to the property
"at the time of the commission of the acts." 18 U.S.C.
§ 1963(l)(6). According to Henson's personal statement, he took
on his caretaking role for the properties after the "initial raid in
2012." That is, he had no interest in the property at the time of
the commission of the acts giving rise to the RICO charges, a
timing problem that is fatal to his claim under the statute. *See*
18 U.S.C. § 1963(l)(6); *United States v. Ginsburg*, 773 F.2d 798,
801 (7th Cir. 1985) (while the government's interest in the

profits or proceeds of racketeering activity does not attach until conviction, its interest *vests* at the time of the act that constitutes the section 1962 violation). *See also United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007) (noting that in a criminal forfeiture under 18 U.S.C. § 853, a "claimant must either demonstrate priority of ownership at the time of the offense … or that he subsequently acquired the property as a bona fide purchaser for value"); *United States v. Totaro*, 345 F.3d 989, 994 (8th Cir. 2003) (noting that section 1963(l) "permits petitioners to challenge an order of forfeiture by showing they had a vested or superior legal right, title or interest in the property at the time the criminal acts took place, or they were bona fide purchasers for value").

Second, Henson has presented no evidence demonstrating "a legal right, title, or interest in the property." 18 U.S.C. § 1963(l)(6). "Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). *See also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law"); *O'Gorman v. City of Chicago*, 777 F.3d 885, 890 (7th Cir. 2015) (same). In his personal statement, Henson apparently took the word "interest" to mean the personal significance that the property held for him rather than his legal rights in the property. Henson cites no Indiana law giving rise to property rights—legal, equitable or otherwise—for a caretaker who "giv[es] brothers a place to live," delegates chores, or oversees the paying of bills. Courts generally do not determine legal interests in property for forfeiture purposes by evaluating the

"history and tradition of the Outlaws." *See* Henson Brief, at 6. Instead, we are guided by state law in determining who holds an interest in property. *Butner*, 440 U.S. at 55; *Roth*, 408 U.S. at 577.

Moreover, the statute calls for a "legal" rather than an equitable interest in the property. *See Timley*, 507 F.3d at 1129 ("'legal interest' encompasses only legally protected rights, not equitable rights"); *United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987) (the term "legal interest" encompasses all legally protected rights, claims, titles, or shares in real or personal property, in contrast to equitable interests). Thus, any equitable interest created by Henson's caretaking or use of the property is insufficient to establish rights under the statute.

We turn to the question of the expert witness. The district court denied as moot Henson's motion for Carlson to appear as an expert. Henson contends on appeal that Carlson would have testified that Henson, as caretaker, paid the bills and directed accounts for the properties, and that it was the tradition of the Outlaws to consider caretakers as having an equitable interest in the properties. As we noted above, however, equitable interests created by the history and tradition of the Outlaws are insufficient to establish property rights and so Carlson's testimony would not have been helpful to the district court. *See* Fed. R. Evid. 702. Moreover, Henson argued below only that Carlson would testify to the value of personal property and to his knowledge of the constitutional issues relevant to forfeiture of personal property. But the value of the personal property was not a fact in issue, *see* Fed. R. Evid. 702(a), and experts generally may not offer legal opin-

ions. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1797 (2014) (because it is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply the law to the facts in evidence, as a general rule, an expert may not offer legal opinions). The district court therefore did not abuse its discretion in denying Henson's motion to allow Carlson to testify as an expert witness.

Finally, Henson asserts that the court erred in granting summary judgment to the government without evidence of a nexus between the crimes committed by Knoll and Shephard and the properties. But Henson never made this argument in the district court and it is therefore waived. *United States v. Clark*, 657 F.3d 578, 582-83 (7th Cir. 2011).

AFFIRMED.