NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 11, 2014[*]
Decided December 19, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 14-1597

| | |
|---|---|
| TIFFANY FABIYI, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 11 C 8085 |
| McDONALD'S CORPORATION, | |
|     *Defendant-Appellee*. | Young B. Kim, *Magistrate Judge*. |

**O R D E R**

For 10 years Tiffany Fabiyi had succeeded as a McDonald's crew member—her duties included running the cash register, making fries, cleaning the kitchen, mopping floors, collecting dirty trays, and sweeping the parking lot—but then beginning in 2008 the company grew increasingly critical of her performance. Though apparently still

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

employed by McDonald's, she has been on "unpaid leave" since 2011. In this lawsuit claiming employment discrimination in violation of federal and state law, *see* 42 U.S.C. §§ 1981, 2000e-2(a), 2000e-3(a), 12112(b), 12203(a); 775 ILCS 5/1-103(J), 5/2-102(A), Fabiyi alleged that McDonald's falsely accused her of poor performance to mask discrimination based on race, sex, marital status, and a disability, and then retaliated when she complained. McDonald's countered that Fabiyi simply was not doing her job well. The district court (a magistrate judge, presiding by consent) granted summary judgment for McDonald's. The court reasoned that Fabiyi, who relied on the indirect method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), did not establish a prima facie case of discrimination or retaliation. We agree with that assessment.

As Fabiyi sees things, discrimination and retaliation are evident from a number of management decisions. In 2008 she was not selected to train for promotion to "crew trainer." From 2010 on she did not receive a raise, and that year she was suspended for a week. Then beginning in early 2011 her hours were cut, and in June of that year she was placed on an unpaid leave of absence. Our review focuses on these allegations.

Fabiyi also says that supervisors yelled at and reprimanded her, sometimes in front of coworkers, but this is not conduct sufficiently adverse to sustain a claim of discrimination or retaliation. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105–06 (7th Cir. 2012); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1029–30 (7th Cir. 2004); *Griffin v. Potter*, 356 F.3d 824, 829–30 (7th Cir. 2004). The same is true about Fabiyi's allegation that a male coworker "rubbed" her buttocks on two occasions about a year apart. Though nominally a "swing manager," the coworker had no ability to affect the terms or conditions of Fabiyi's employment, *see Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004), and in any event McDonald's promptly investigated the first incident, and Fabiyi never told the company about the second, *see Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 731–32 (7th Cir. 2009). More importantly, a coworker's offensive behavior, in order to support a claim of sexual harassment, must be objectively severe or pervasive enough to create an abusive working environment, s*ee Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462–63 (7th Cir. 2002), and these two isolated incidents were not, *see id*. at 462–63 (two incidents of unwanted back rubbing); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361–62 (7th Cir. 1998) (four isolated incidents of unwanted touching of arm, finger, and buttocks); *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 706–08 (7th Cir. 1995) (one incident of supervisor rubbing foot against plaintiff's leg and another where he grabbed her buttocks); *McMiller v. Metro*, 738 F.3d 185, 188-89 (8th Cir. 2013) (kissing twice on face and trying three times to put arms around plaintiff). Except as necessary for context, we need not say more about these latter allegations.

With that we turn to the evidence. By the time McDonald's moved for summary judgment, both of the lawyers recruited by the district court had withdrawn because of disagreements with Fabiyi over strategy. She responded to the company's statement of material facts and offered more facts of her own, but the district court reasoned that most of her submissions did not include adequate citations to the materials in the record and disregarded them. *See* N.D. ILL. CIV. L.R. 56.1(b)(3); *Cady v. Sheahan*, 467 F.3d 1057, 1060–61 (7th Cir. 2006) (explaining that party violates Local Rule 56.1 by failing to "adequately cite the record" when disputing movant's statement of material facts). We likewise disregard those submissions. *See Patterson v. Ind. Newspapers Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) (explaining that we will enforce district court's choice to demand strict compliance with local rules governing summary judgment); *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) (same). Unless otherwise noted, the following facts are undisputed and presented in the light most favorable to Fabiyi, as the party opposing summary judgment. *See Arizanovska v. Wal-Mart Stores*, Inc., 682 F.3d 698, 702 (7th Cir. 2012); *SMS Demag Aktiengesellschaft v. Material Sci. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

In 2008, Fabiyi wanted to become a "crew trainer." She asked to be trained for that position, but crew trainers must be available to work as needed (including evenings and weekends), a condition that Fabiyi was unwilling to meet. She was not selected or trained for the position, which prompted her to call McDonald's "business integrity line," a complaint hotline, in March 2009. The following week Fabiyi received an overall rating of "good" on her performance evaluation, but after that she was reprimanded five times in eight months for insubordination, unexcused absences, leaving during her shift, refusing to work the fry station, and shorting her cash register. Meanwhile, a human-resources manager investigated Fabiyi's hotline complaint and in October 2009 concluded that she was not trained as a crew trainer because she did not meet the availability requirements.

Fabiyi called the hotline again in January 2010 complaining that a supervisor had berated her for requesting a performance review. She soon received that review, which rated her overall performance as "needs improvement." McDonald's bases wage increases on performance reviews, and Fabiyi's rating made her ineligible. She was not happy and called the hotline a third time, accusing management of withholding a raise because of her sex. She also complained again about not being trained as a crew trainer, which she attributed to being black. Two days after this call, Fabiyi's register admittedly was short, and she was reprimanded. The following month, in February 2010, a

human-resources manager concluded after investigating that Fabiyi did not receive a raise because of subpar performance, not as a result of discrimination or retaliation.

Three months later, in May 2010, Fabiyi was suspended for a week after accumulating three unexcused absences. This time she not only called the hotline alleging discrimination, but also filed an administrative charge of race and sex discrimination and retaliation with the Illinois Department of Human Rights. Later that month she called the hotline again and reported (for the first and only time) that the swing supervisor had touched her buttocks. Just hours after making that call she was sent home for arguing with a coworker at the front counter. The director of human resources investigated the alleged touching but could not substantiate the incident, which the swing manager denied.

Fabiyi received another "needs improvement" rating in July 2010. Later in the month a supervisor assigned her to clean the lobby and parking lot, but she refused on the basis of "seniority," even though McDonald's does not allocate tasks by seniority. Fabiyi was reprimanded, yet in October 2010 she again refused to clean the lobby and parking lot, this time saying that these tasks were for janitorial staff. When a supervisor asked if a medical condition prevented her doing as asked, she responded in the negative.

Fabiyi called the hotline again in December 2010 to complain generally that she was being discriminated against. Her hours were reduced beginning in January 2011, which her supervisor said was partly because of her "needs improvement" ratings. McDonald's uses computer software to schedule workers based on availability, anticipated sales, and performance ratings. The human-resources director investigated again, and in February 2011 rejected Fabiyi's claim of discrimination.

In April 2011 Fabiyi filed a second administrative complaint with the Illinois Department of Human Rights, this one resurrecting her May 2010 accusation against the swing manager (and also saying there had been a second, unreported incident on an unspecified date). Two days later Fabiyi received another "needs improvement" rating, which again kept her from receiving a raise and led to a further reduction in hours.

Then in June 2011 Fabiyi refused for a third time to clean the lobby and parking lot. Her reason on this occasion was that the assignment should be given to a new hire. She was reprimanded and sent home after being told that documentation was required if she thought that a medical condition prevented her from doing the assigned cleaning.

She immediately called the hotline and said she had told her supervisor that her back pain prevented her from doing the work that had been requested. The following day an operations consultant discussed the reprimand with Fabiyi. When she told the consultant about her back pain, he also requested documentation. When two weeks later she brought a note from an emergency room doctor saying that she should not bend over a heavy mop and should avoid bending over the fry station for more than 30 minutes, a human-resources manager requested more information about these restrictions, including their duration. Meanwhile, Fabiyi was placed on unpaid leave until her doctor could verify that she was able to perform the essential functions of her job. Fabiyi later brought a second note from her personal physician explaining, not that she could perform the essential functions of a McDonald's crew member, but instead that she suffered from chronic back pain and could not engage in heavy lifting or excessive bending. The doctor supplied another note in August, this one asserting that, for the next three months, Fabiyi should bend only as tolerated and not lift more than 10 pounds. He provided additional notes in January and March 2012, each renewing these restrictions for another three months. As he would later admit during his deposition, however, the doctor had no clinical basis for these restrictions. When the final three-month period ended, Fabiyi ignored requests from human-resource's personnel for updates. After this Fabiyi did not return to McDonald's (she took a job as a bus driver at a higher wage), but when deposed she insisted that she would like to return.

The district court concluded that a jury could not reasonably find from this evidence that Fabiyi was subjected to discrimination or retaliation. As the court explained, she did not dispute that her unavailability for evening and weekend shifts made her ineligible when she sought training and promotion to crew trainer in 2008. Similarly, the court reasoned, Fabiyi's undisputed, ongoing failure to meet McDonald's legitimate performance expectations explains the absence of raises beginning in 2010 and her suspension that same year. Moreover, the court continued, Fabiyi lacks evidence that any coworker with like performance issues was receiving more hours when hers started to decline in 2011. As for Fabiyi's claim of retaliation, the court concluded that the temporal proximity between her complaints and the alleged adverse actions was too tenuous to suggest a causal link, and that Fabiyi had not presented evidence showing that her supervisors knew about her protected activity. And finally, the court reasoned, a jury could not find for Fabiyi on her claim of disability discrimination because she did not introduce evidence that she could perform the essential functions of her job as a crew member even with reasonable accommodation.

On appeal Fabiyi criticizes her appointed lawyers, but their performance is not ground for reversal in this civil case. *See Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001). Otherwise, despite listing many issues in her brief, she does little more than insist that she submitted significant evidence of race, sex, and disability discrimination and retaliation without providing us an "articulable basis for disturbing the district court's judgment." *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); s*ee* FED. R. APP. P. 28(a)(8)(A); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014).

As we read her brief, Fabiyi essentially argues that the district court erred in not crediting her evidence. She specifically points to her calls to the hotline, an (allegedly false) Equal Employment Opportunity report written by a human-resources manager, affidavits from McDonald's supervisors and human-resources employees documenting Fabiyi's performance shortcomings, the comparators she named in her complaint, satisfactory performance evaluations from her first ten years at McDonald's and a positive evaluation from the employer that hired her after she last worked for the restaurant. Whatever the strength of these materials, we have already noted that the district court was entitled to enforce Local Rule 56.1 by accepting McDonald's statement of material facts, since Fabiyi's response did not adequately cite to the evidentiary materials she submitted or any others in the record. In any event, there is little in the materials Fabiyi discusses that seems helpful to her. Her calls to the hotline were allegations of discrimination and retaliation, but these conclusory allegations were not evidence that create a disputed issue of material fact. The affidavits from the McDonald's employees recount her performance inadequacies, not successes. She does list names and what appear to be hourly wages of coworkers, but this effort to identify comparators was lacking essential details about race, sex, and performance from which a jury reasonably could conclude that Fabiyi was treated differently from similarly situated employees outside of her protected classes. And, finally, the district court did take into account Fabiyi's favorable ratings in prior years, but this information, like the positive evaluation from Fabiyi's next employer, does not place in dispute any of the evidence McDonald's submitted about 2008 through 2012.

One other point from Fabiyi's brief bears mention. She disagrees with the district court's conclusion that a jury could not reasonably base a finding of retaliation on the timing of her many allegations of discrimination relative to the company's adverse actions. In the district court, Fabiyi asserted that her suspension, five months after she had complained about being denied a raise, was retaliatory. She said the same about the reduction in hours seven months after she had filed her first administrative complaint with the Illinois Department of Human Rights, and about her placement on unpaid leave

three months after filing her second administrative complaint. "In egregious cases, suspicious timing alone might create a triable issue on causation," but "it rarely does." *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 389–90 (7th Cir. 2012). Here, the district court was correct; these intervals of three, five, and seven months between Fabiyi's complaints and the alleged retaliation do not alone create a material issue of fact about whether Fabiyi's complaints were the cause. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval alone insufficient); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) (60-day interval alone insufficient); *but see Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772–73 (7th Cir. 2008) (nine-day interval plus tone of supervisor's statements sufficient); *Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419–20 (7th Cir. 2004) (one-month interval and evidence that discipline for absences was fabricated was sufficient).

We have reviewed Fabiyi's remaining contentions and conclude that none merits specific discussion. Accordingly, the judgment of the district court is AFFIRMED.